[No. 12743.  In Bank. — December 31, 1888.]

## SAN DIEGO LAND AND TOWN COMPANY, Appellant, *v.* GEORGE NEALE et al., Respondents.

New Trial as to Part of the Issues. — Where the issues are separable, the losing party may move for a new trial as to a part, leaving the findings to stand as to the remainder.

Eminent Domain — Market Value — Value in Use — Value for a Particular Purpose for Which the Property has not been Used. — The value of land in proceedings in eminent domain is not the value in use to the owner, but the market value, by which is meant, not what the owner could realize at a forced sale, but the price which he could obtain after a reasonable time, such as would ordinarily be taken to make a private sale of like property. In ascertaining such value, the fact that the property has never been used for purposes for which it has a value is immaterial. The present value for prospective purposes is to be taken. It is proper, therefore, to take the value of the property for reservoir purposes, although it has never been used for such purposes.

Id. — Value of Property Which is Valuable only in Connection with Other Property Which is not Owned by the Defendant. — The fact that the property can be used for reservoir purposes only in connection with the land of the plaintiff does not prevent the application of the foregoing rule, or enable the plaintiff to take it without regard to its value for such purposes. The question of value is distinct from the question of ownership.

Id. — Remote and Speculative Value — Enhancement in Value by Reason of the Proposed Improvement. — When there is no current rate of price, and where in consequence the court must arrive at the value from a consideration of the uses to which the property may be put, the enhancement in value by reason of the proposed improvement cannot be considered. Such a value is too remote and speculative.

Id. — Enhancement in Value of the Adjacent Lands. — For the same reason, the enhancement in value of the adjacent lands by reason of the proposed improvement cannot be considered.

Id. — Mode of Ascertaining the Value — Opinions of Witnesses Who are not Experts. — Upon the question of what is the market value, in the sense above stated, the opinions of those who have a knowledge of the circumstances and surroundings may be taken, although they are not experts.

Appeal from a judgment of the Superior Court of San Diego County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Henderson & McDonald*, and *Luce & Henderson*, for Appellant.

*Hunsaker, Britt & Lamme*, and *J. E. Deakin*, for Respondents.

Hayne, C. — Proceeding to condemn land for the purposes of a reservoir. It appears from the findings that the use was a public use; that the value of the land to be taken was $280 per acre, amounting in all to $98,126; that the damage to the remainder of the tract amounted to $1,805, and that the value of the improvement was $300. The plaintiff moved for a new trial as to issue concerning the value of the land sought to be taken, but as to no other issue, and appeals from the order denying the motion.

The defendants make a preliminary objection that a party cannot move for a new trial as to a part of the issues. So far as we are advised, this precise question has not been decided in this state. But upon principle, and according to the analogies of existing rules, we think that the objection is not well taken. There is nothing in the code either expressly forbidding or expressly authorizing such a course. The implication from the language, however, tends to sanction it. The definition of a new trial is as follows: "A new trial is a re-examination of *an issue* of fact in the same court after a trial and decision by a jury or court or by referees." (Code Civ. Proc.,

sec. 656.) Now, as the law-makers cannot be supposed to have thought that the majority of cases involved only one issue of fact, there is perhaps some implication that they intended that there might be such a thing as a new trial of a single issue, whether there were other issues or not. There is at least no implication to the contrary. The analogies of other provisions and previous decisions support the view that there may be a new trial as to a part of the issues. Thus a party may *appeal* from a part of a judgment or order. (See cases collected in note 4 to section 185 of Hayne on New Trial and Appeal.) So it has been held that where a party serves his notice of intention to move for a new trial upon only one of two defendants, it is proper to grant a new trial as to the one served, but not as to the other. ( *Wittenbrock* v. *Bellmer*, 57 Cal. 12.) And it has always been the practice (except in cases of a peculiar character) for any party who is dissatisfied with the result to move for a new trial as to himself, leaving the judgment to stand as to the other parties. And in one sense such a motion is a motion for new trial as to a part of the issues. So it is settled that, upon an appeal from the judgment, the appellate court may order a new trial as to a part of the issues, leaving the decision in force as to the remainder. (*Marziou* v. *Pioche*, 10 Cal. 546; *Jungerman* v. *Bovee*, 19 Cal. 364; *Kinsey* v. *Green*, 51 Cal. 379; *LeClert* v. *Oullahan*, 52 Cal. 253; *Watson* v. *Cornell*, 52 Cal. 91; *Swift* v. *Canavan*, 52 Cal. 419; *Billings* v. *Everett*, 52 Cal. 661; *Phipps* v. *Harlan*, 53 Cal. 87.) And if this can be done, it is difficult to assign a satisfactory reason why the party could not ask the trial court for the same relief in the first instance. The cases which hold that a motion for new trial is premature if made before all the material issues are disposed of are not in conflict with our conclusion, for in the case before us all the material issues were disposed of before the motion was made. We see no inconvenience that can result from the practice. The

time to move as to the remaining issues would not be extended by a motion as to a part; and the party would lose his right to attack the findings as to the remaining issues, unless the time should be extended, which could only be for a short period without the consent of the parties. And this being so, the result would simply be the elimination of a part of the controversy, which is not in itself undesirable. The question arose in Nevada upon a similar statute, and the court, after an elaborate examination of the subject, held that a motion for new trial as to a part of the issues was permissible. (*Lake* v. *Bender*, 18 Nev. 361.) We are satisfied with the rule laid down in that case. It is possible that there may be cases where the issues are so inseparably blended as to render a separation impracticable. We express no opinion as to that. But it is clear that the present case is not of that character. The preliminary objection should therefore be overruled.

Upon the merits, the general features of the case are as follows: The plaintiff was the owner of a portion of a valley, called the Sweetwater Valley, and of the right to divert the waters of the Sweetwater River, and, before the commencement of the proceedings, had commenced to build a dam upon its own land. The defendants were the owners of a tract above the dam. There was no practicable site for a dam upon defendants' land, either on the part sought to be condemned, or on the remainder of the tract. But it was shown that the water collected by the plaintiff's dam would back up and flood a portion of their tract; and this is the part sought to be condemned.

We are satisfied that there was error occurring at the trial sufficient to require a reversal of the order appealed from. But as several questions have been argued which will arise upon a retrial, we have examined them with the care which their importance demands.

1. It is contended that there was error in admitting evidence of the value of defendants' property " as a reser-

voir site," and in instructing the jury upon that theory; and the cases of *Gilmer* v. *Lime Point,* 19 Cal. 47, and *Central P. R. R. Co.* v. *Pearson,* 35 Cal. 247, are cited. It must be admitted that these cases in some degree sustain the position. In *Gilmer* v. *Lime Point* the court below refused to allow a witness to be asked what was the value of the property " as a site for a fortification "; and while the judgment was reversed on another ground, the appellate court said that the exclusion of the question was proper. In the other case, the lots of one of the defendants bordered on the Sacramento River, and one of the reasons for reversing the judgment was, that evidence had been admitted to the effect that "in connection with the Sacramento River she claimed the right to wharf out and erect landings and warehouses." The court referred to this as " wharf privileges," and said, in substance, that the right to erect a wharf was something to which the owner had not a right, unless a franchise therefor were granted by the state, and that no franchise might ever be granted. The language of the opinion seems to imply that it had in its mind the value of the privilege as something distinct from the land, and not as an element of the value of the land itself. But in so far as these cases sustain the position of the appellant, we think they are in violation of sound principles, and opposed to the overwhelming current of authority.

The word "value" is used in different senses. Bouvier, in his definition, says: " This term has two different meanings. It sometimes expresses the utility of an object, and sometimes the power of purchasing goods with it. The first may be called the value in use, the latter the value in exchange." For the purposes of the law of eminent domain, however, the term has reference to the value in exchange, or market value. There are some cases which seem to hold that the value in use to the owner is to be taken if it exceeds the market value. But it will generally be found, on a careful examination, that

such cases either relate to the damage accruing to the owner from the taking, and not to the value of the property itself, or overlook the distinction between the two things. The consensus of the best-considered cases is, that for the purposes in hand the value to be taken is the market value (*Jacksonville & S. E. R. R.* v. *Walsh,* 106 Ill. 255; *Dupuis* v. *C. & N. W. R'y,* 115 Ill. 99; *Little Rock J. R'y* v. *Woodruff,* 49 Ark. 388; *Low* v. *R. R. Co.,* 63 N. H. 558; *Searle* v. *Lackawanna R. R.,* 33 Pa. St. 57; *Arcata etc. R. R. Co.* v. *Murphy,* 71 Cal. 122; and see Cooley's Constitutional Limitations, 565; 2 Dillon on Municipal Corporations, sec. 487), by which is undoubtedly meant, not what the owner could realize at a forced sale, but " the price that he could obtain after reasonable and ample time, such as would ordinarily be taken by an owner to make sale of like property." (*Little Rock J. R'y* v. *Woodruff,* 49 Ark. 390.) The problem, then, is to ascertain what is the market value. Now, where there is an actual demand and current rate of price, there can be but little difficulty. But in many instances, as in the case before us, there is no actual demand or current rate of price, either because there have been no sales of similar property, or because the particular piece is the only thing of its kind in the neighborhood, and no one has been able to use it for the purposes for which it is suitable and for which it may be highly profitable to use it. In such case it has been sometimes said that the property has no market value, in the strict sense of the term. (*Chicago & N. W. R'y* v. *C. & E. R. R.,* 112 Ill. 607; *Lake S. & M. S. R'y* v. *C. & W. J. R. R.,* 100 Ill. 33; *St. Louis R. R.* v. *Chapman,* 38 Kan. 307.) And in one sense this is true. But it is certain that a corporation could not for that reason appropriate it for nothing. From the necessity of the case the value must be arrived at from the opinions of well-informed persons, based upon the purposes for which the property is suitable. This is not taking the " value in use " to the owner as contradistinguished from the market value.

What is done is merely to take into consideration the purposes for which the property is suitable, as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which, in a general sense, may be said to be the market value. And in such an inquiry it is manifest that the fact that the property has not previously been used for the purposes in question is irrelevant. The current of authority sustains these views.

In the *Boom Co.* v. *Patterson*, 98 U. S. 403, three islands in the Mississippi River were sought to be condemned for the purpose of a boom or storing-place for floating logs. For general purposes the property was of insignificant value, but it was found to have a large value for boom purposes. It had never been used for such purposes, but there was nothing to prevent other persons or companies from engaging in the enterprise if they had seen fit to do so. It was held that the value for boom purposes must govern. And the court, per Field, J. (who, when on the state bench had concurred in *Gilmer* v. *Lime Point*), said: " In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, What is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted?—that is to say, what it is worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated. So many and so varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it

is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but as a general thing we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future."

The same rule has been laid down in numerous other cases. In *Harrison* v. *Young,* 9 Ga. 364, 365, a piece of land was sought to be condemned by a bridge company. The trial court refused to admit evidence as to the value of the land " as a bridge site," and restricted the evidence " to the actual value of the land for its agricultural and productive qualities." It was held that this was an error, the court, per Lumpkin, J., saying: " Who, in making investments of capital in real estate, is not influenced by the consideration that it will be valuable or a town, bridge, ferry, mill, manufactory, etc.? " In *Louisville R. R. Co.* v. *Ryan,* 64 Miss. 399, the tract condemned was a narrow strip along the Mississippi River. Evidence was admitted to show that it was peculiarly valuable as a mill-site, although no mill was then upon it. Upon appeal, it was held that the evidence was properly admitted, the court saying: " Clearly, it is of insignificant value for agricultural purposes, and there is neither a wharf, a factory, or a saw-mill on it, and there may never be. But if its adaptability for these purposes, or any one of them, gives it a present value, the owner is entitled to that value, though, in fact, no one now proposes to use it for any of these purposes."

In *Chicago R. R. Co.* v. *The Catholic Bishop,* 119 Ill. 530, the property sought to be condemned for railroad purposes was a strip in front of a cemetery. For many years it had been rented as a marble-yard. Evidence was introduced that it had a special value for restaurant purposes. It was held that this value should be con-

sidered, although the bishop would not rent it for such purposes, the court saying: " Because the proprietor of land elects to use it for one purpose rather than another, we do not think its capacity for the use to which it is not put is improperly taken into consideration in estimating its value." In *South Park Commissioners* v. *Dunlevy*, 91 Ill. 49, two tracts were sought to be condemned for a public park, and it was held to be proper to prove what the property would be worth if subdivided into lots and blocks.   In *Sherman* v. *St. Paul R. R. Co.;* 30 Minn. 229, the land sought to be condemned for railroad purposes, " though at the time occupied as a farm, was situated in the vicinity of the city of St. Paul, and near certain public institutions." And in view of this, it was held proper to prove its value for suburban residences. And so in other cases. (See *Chicago & E. R. R. Co.* v. *Jacobs*, 110 Ill. 416; *Haslam* v. *Galena R. R.*, 64 Ill. 353; *Little Rock J. R. R.* v. *Woodruff*, 49 Ark. 394; *Railway Co.* v. *McGehee*, 41 Ark. 207; *Amoskeag Co.* v. *Worcester*, 60 N. H. 526; *Low* v. *R. R. Co.*, 63 N. H. 558; *Montana R. R.* v. *Warren*, 6 Mont. 275; *Goodlin* v. *Cincinnati Canal Co.*, 18 Ohio St. 181; *Chicago & N. W. R. R.* v. *C. & N. E. R. R.*, 112 Ill. 608; *Matter of N. Y. & L. R. R. Co.*, 27 Hun, 120; *St. Louis R. R.* v. *Chapman*, 38 Kan. 307.)

We think, therefore, that it was proper to show the value of the property " as a reservoir site." This is not sanctioning a remote or speculative value. It is merely taking the present value for prospective purposes.

2. But it is argued that the value " as a reservoir site " should not have been taken, because there was no practicable site for a dam upon the defendants' property, the only use of which for reservoir purposes being in connection with the land of the plaintiff. But while it might perhaps have been more accurate to say " a *part* of a reservoir site," or for "reservoir purposes," we think that this trifling verbal inaccuracy need not be noticed, and that the evidence was properly admitted. While it

is true that the defendants' property had no value for reservoir purposes, except in connection with the land of the plaintiff, it is equally true that the plaintiff's property had comparatively little value for such purposes, except in connection with the land of the defendants; the plaintiff's own evidence being that "with the defendants' land included, the reservoir will hold about six thousand million gallons, and without the land of the defendants, it will hold only about one tenth that quantity." And this being the case, we can see no more reason for saying that the plaintiff cant ake the defendants' portion without regard to its value for reservoir purposes than for saying that the defendants (if they had happened to commence proceedings first) could take the plaintiff's portion upon the same basis. The question of value is distinct from the question of ownership. As is well known, the former method of ascertaining the compensation for land taken for railroad purposes was an appraisement by commissioners; and under that system it was held that the commissioners should confine themselves to ascertaining the value, and had nothing to do with the question of ownership or the distribution of the fund. (*San F. & S. J. R. R.* v. *Mahoney*, 29 Cal. 118.) Under the present system the compensation is to be determined by a jury, or by the court if a jury be waived. (Const., art. 1, sec. 14.) But this change in the tribunal does not change the nature of the questions to be decided. The question of value is still as distinct in its nature from the question of ownership as formerly. Suppose, for illustration, that the two sides of a cañon suitable for reservoir purposes were owned respectively by two persons who are joined as defendants in a proceeding to condemn the land by a water company which did not own any of the property. It would not be pretended that such company could take the property at its value for grazing or agricultural purposes (which value might be nominal) merely because it was owned by

different persons. Such a proposition would be ridiculous. Now, there is no difference in principle between such a case and one where the company itself owns half of the cañon, and is seeking to acquire the other half. Nor is there any difference in principle where the company owns somewhat more than half, or the more valuable portion. The logical result of the argument for the appellant is, that if the company owned but a small portion of the cañon, it could acquire all the rest, without regard to the value for the only purpose for which it had much value, merely because the other parties did not own the whole, and had not been able or did not choose to go into the business themselves. It seems clear that such is not the law.

3. We think, however, that the court erred in allowing a remote and speculative value to be taken into consideration. A witness was allowed to give his estimate of value upon the basis of the following question:—

"Assuming that the plaintiff's intended reservoir will hold six thousand million gallons of water, or water sufficient to irrigate twenty thousand acres of land lying below their dam; and that the annual rainfall is sufficient to supply such a reservoir; and that there is such a quantity of land susceptible of irrigation from such a reservoir; *and that its value would be enhanced at least fifty per cent by having irrigation facilities afforded to it;* and also that the reservoir would be sufficient to supply the inhabitants of National City with water; and also that without the use of the defendants' land any reservoir constructed above the plaintiff's dam as described in the complaint would hold less than one tenth of what the reservoir, using the defendants' land, will hold; *and also that a suitable dam was, on the thirteenth day of June, 1887, already in course of construction* below this reservoir site; and assuming also that there was no other site equally suitable in that immediate neighborhood for such a purpose,— are you able to give an opinion as to the value of

the lands sought to be condemned, on the thirteenth day of June, 1887, for the purposes of such a reservoir?" The witness answered in the affirmative, and gave his estimate of value upon the basis stated.

There are two elements in this question which we think should not have entered into the estimate, viz.:—

(*a*)   It was not proper to base the estimate of the value of the land taken upon the fact that a dam was "already in course of construction." This was in effect saying that the defendants should be allowed the increase in value arising from the plaintiff's improvements; or, at any rate, a jury would be likely to get that idea from it. Now, if the improvement had been affixed by the plaintiff to the land of the defendants without any color of authority, but as a mere trespasser, it might be that the defendants would be entitled to the increased value arising from such improvement, under the rule laid down in *United States* v. *Land in Monterey County*, 47 Cal. 515. We express no opinion as to that. But that is not the case here, because the dam is affixed to the plaintiff's own land. The proposition is, therefore, that the defendants are entitled to the benefit arising from the improvement upon the adjoining land for the purposes of which their land is sought to be taken. This seems to us inadmissible as a direct element of value. It is possible that they might get some benefit from it indirectly. That is to say, the public knowledge of a proposed improvement might cause an actual demand in the market and a subsequent advance in the current rate of price. In such case it would be impracticable for a court to analyze the price and determine the proportion in which any particular element contributed thereto. The scales of justice do not balance quite so delicately as that. But aside from this indirect benefit, and in a case where there is no actual current rate of price, and where in consequence the court must arrive at the value from a consideration of the uses to which

the property may be put, it seems monstrous to say that the benefit arising from the proposed improvement is to be taken into consideration as an element of the value of the land.   It has been a question with many courts whether the benefit arising from the proposed improvement is to be *charged against* the owner of the land sought to be condemned.   (*S. F. A. & S. R. R.* v. *Caldwell*, 31 Cal. 373.)   But the result of the course taken at the trial would be, not only not to charge such benefit against the owner, but to *credit it to his favor*, which in effect is charging it against the party who makes the improvement.   There are some decisions which seem to countenance this view. But we think that the learned judges who made them overlook the distinction above adverted to between an indirect benefit arising from an actual increase in the market price consequent upon a knowledge by the public of the proposed improvement, and cases where there is no such actual market price, and where the value must be arrived at by allowing witnesses to base their opinions as to the value upon the purposes for which the property is suitable.   We think that the correct rule in this regard is that acted on in *Cobb* v. *Boston*, 112 Mass. 183.   (And compare *Kerr* v. *South Park Commissioners*, 117 U. S. 387.)

(*b*) It was not proper to allow the witness to base his estimate of value upon the circumstance that the land susceptible of irrigation from the reservoir would be enhanced in value "at least fifty per cent by having irrigation facilities afforded to it."   This can only have been put in upon the theory that the land to be condemned would share in this increase in value, or at any rate a jury would be likely to get that idea from it.   But as stated under the preceding head, the value of the land taken is to be estimated irrespective of the benefit resulting to it from the proposed improvement, and *a fortiori* the estimate should be irrespective of the benefit resulting to adjacent lands.   If the prospective increase in value of the adjacent land is to be taken into consideration, the

prospective increase in value of the lots in National City should be so, too. The reservoir, according to the question, was "sufficient to supply the inhabitants of National City with water"; and good water facilities must be supposed to increase the value of city lots as well as of country land; so that if the defendants are entitled to the prospective increase in the one case, they are in the other. It seems clear, however, that such an increase in value is too remote and speculative to be considered.

We have not overlooked the fact that it appears from the plaintiff's own evidence that the value of the surrounding land would be increased in value at least fifty per cent by having irrigation facilities afforded to it. But this does not help the respondents' case in this regard. For, in the first place, the record does not show that the plaintiff put in this evidence as bearing upon the issue as to value. It may have been put in upon the question of the necessity for the taking, while in the question above quoted it is expressly put as an element of the value. And in the second place, the introduction of irrelevant evidence upon one side without objection does not justify the introduction of irrelevant evidence upon the other side. (*Donelly* v. *Curran*, 54 Cal. 282.)

It is to be observed that the question before us relates to the value of the land taken, and not to the damage to the remaining portion, which was not included in the motion for new trial. Whether the same rules would apply to the latter case is not a question which we need consider.

4. Upon the trial, witnesses who had more or less knowledge of surroundings and of values; but who could not be said to be experts in the strict sense of the term, were allowed to testify concerning the value of the land. We think that this was proper. While it is true that the witnesses were not experts in the strict sense of the term, and that their opinions as to the value cannot in strictness be said to be a fact, yet it seems to be settled that

from the necessity of the case the general rules of evidence suffer an exception in this particular. The principle upon which this rests was laid down in *People* v. *Sanford,* 43 Cal. 32, 33. In that case a person who was not an expert, but who had seen the deceased at a particular time, was allowed to state what appeared to be his condition of mind. This was held to be proper, and the court, per Wallace, C. J. (adopting the language of a North Carolina case), said: "It approaches to knowledge, and is knowledge so far as the imperfection of human nature will permit knowledge of these things to be acquired; and the result thus acquired should be communicated to the jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by the observations of others." In the subsequent case of *People* v. *Monteith,* 73 Cal. 7, it was held, upon the authority of the preceding case, that a witness who was not an expert could be allowed to state what was the condition of the defendant as to sobriety on a certain occasion. In other states the principle of these cases has been applied to questions as to the value of property both in proceedings in eminent domain and in other cases. In *Shattuck* v. *Stoneham R. R.,* 6 Allen, 117, persons who were familiar with the neighborhood were allowed to give their opinions as to the value of land taken in eminent domain, and this was held to be proper, the court, per Chapman, J., saying: "This is permitted as an exception to the general rule, and not strictly on the ground that such persons are experts; for such an application of that term would greatly extend its signification. The persons who testify are not supposed to have science or skill superior to that of the jurors; they have merely a knowledge of the particular facts of the case, which jurors have not. And as value rests merely in opinion, this exception to the general rule that witnesses must be confined to facts, and cannot give opinions, is founded in necessity and

obvious propriety." So in *Robertson* v. *Knapp*, 35 N. Y. 92, upon a question as to the value of a farm, farmers and residents of the neighborhood were allowed to give their opinions as to the value, and the court, per Leonard, J., said: "In general, the opinion of the witness is not evidence, but there are exceptions to the rule. The exceptions generally proceed upon the principle that the question is one of science or skill, or has reference to some subject upon which the jury are supposed to have less knowledge than the witness. The case of the value of property forms one of the admitted exceptions." A similar ruling was made in *Penn. & N. Y. R. R. Co.* v. *Bunnell*, 81 Pa. St. 426, in which case, Sharswood, J., delivering the opinion, said: "The market value of land is not a question of science and skill, upon which only an expert can give an opinion. Persons living in the neighborhood may be presumed to have a sufficient knowledge of the market value of property with the location and character of the land in question. Whether their opinion has any proper ground to rest upon, or is mere conjecture, can be brought out upon cross-examination. Such opinions have always been received." A similar ruling was made in *Le Roy & W. R. R. Co.* v. *Hawk*, 39 Kan. 638, in which case, Johnston, J., delivering the opinion of the supreme court of Kansas, said: "This is not a question of science or skill, requiring expert testimony, but it falls within one of the exceptions to the rule excluding mere opinions of ordinary witnesses. It is not necessary that the witnesses shall be engaged in buying and selling land, nor that they should have knowledge of an actual sale of that or similar land to make them competent. A farmer living in the vicinity is presumed to be familiar with and to know the value of farm lands, and there can be no doubt of his competency when it is shown that he knows the situation and character of the land, its productiveness and availability for use, and who further states that he knows the value of the same." And so in

other cases.    (See *St. Louis R. R.* v. *Chapman*, 38 Kan. 307; *Leavenworth R. R.* v. *Paul*, 28 Kan. 821; *Colville* v. *St. Paul R. R. Co.*, 19 Minn. 285; *Springfield R. R.* v. *Calkins*, 90 Mo. 543; *Vandine* v. *Burpee*, 13 Met. 291; *Swan* v. *Middlesex*, 101 Mass. 177; *Frankfort & K. R. R. Co.* v. *Windsor*, 51 Ind. 238.)

Upon the principle of these cases we think that the evidence was admissible.

In addition to the appeal from the order denying a new trial, there is in the transcript a notice of appeal from the judgment. But none of the counsel have suggested that the points made arise upon that appeal, or advanced any reason why the judgment should be reversed thereon.    Following the lead of counsel we have assumed that there is no error which can be considered upon that appeal.

We therefore advise that the judgment be affirmed as to all the issues except the issue as to the value of the land taken, and that the judgment as to that issue, and the order denying a new trial, be reversed, and the cause remanded for a new trial of said issue, the appellant to recover its costs of appeal.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment as to all the issues, except the issue as to the value of the land taken, is affirmed; the judgment as to that issue, and the order denying a new trial, are reversed, and the cause remanded for a new trial of said issue, the appellant to recover its costs of appeal.

McFARLAND, J., concurring. — I concur in the judgment, but I dissent from so much of the opinion of Mr. Commissioner Hayne as holds that there was no error in admitting evidence of the value of defendant's land as a " reservoir site," and in instructing the jury upon

that theory. That would be, practically, to allow defendant to recover for an enhancement of the value of his land brought about by the very act of taking it. The rule stated in *Gilmer* v. *Lime Point*, 19 Cal. 47, and *Central P. R. R. Co.* v. *Pearson*, 35 Cal. 247, applies here, and I see no good reason for overruling those cases.

SEARLS, C. J., concurring. — I concur in the judgment and in the views expressed by McFarland, J.

WORKS, J., did not participate in the decision of this cause.