In the Matter of the Application of THOMAS F. GILROY, as Commissioner of Public Works of the City of New York, etc.

THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent; MARY P. ISELIN and Others, as Trustees under the Will of MARY M. GOUVERNEUR, Deceased, and Others, Appellants.

*Eminent domain — measure of damages — oath of the commissioners — residence of the commissioners.*

In determining the damages to be awarded in a proceeding instituted by the commissioner of public works of the city of New York to acquire real estate for the maintenance, preservation and increase of the supply of pure and wholesome water for the city of New York, the commissioners appointed to assess such damages, in determining what is the fair market value of the premises so to be taken, must take into consideration the availability of the property for use in connection with the water supply of New York city.

The omission from the constitutional oath required to be taken by such commissioners of the word " faithfully " is sufficient to invalidate the proceeding, unless the parties can be held to have waived the objection by going on without calling attention to the defect until the report was made.

The fact that two of the commissioners appointed by the court in such proceedings are neither residents of the county in which the property sought to be taken is situated nor residents of an adjoining county, does not affect the jurisdiction of such commission, where all claimants had notice of their appointment by the terms of the order of the court.

APPEAL by Mary P. Iselin and others, as trustees under the will of Mary M. Gouverneur, deceased, and others, from " the appraisal and report of Messrs. Daniel W. Guernsey, Martin T. McMahon and Arthur D. Williams, the commissioners herein, dated January 14, 1894, and filed in the office of the clerk of Putnam county January 15, 1894, and from each and every part of such appraisal and report;" also from an order of the Supreme Court granted at the Orange Special Term, bearing date the 17th day of February, 1894, and entered in the office of the clerk of the county of Putnam, confirming the report of said commissioners of appraisal; and also from an order granted at the Orange Special Term, bearing date the 17th day of February, 1894, and entered in the office of the clerk of the county of Putnam, denying the motion of the appellants to vacate and set aside said appraisal and report, and all pro-

ceedings of said commissioners, and to direct a new appraisal of the property involved in the proceeding, with notice of an intention to bring up for review on such appeal an order granted at the Westchester Special Term, and entered in the office of the clerk of the county of Putnam on the 1st day of July, 1890, appointing Daniel W. Guernsey and others commissioners in this matter, and all the proceedings of said commissioners thereunder.

*Eugene Frayer*, for the appellants.

*H. T. Dykman*, for the respondent.

WILLARD BARTLETT, J.:

This proceeding was instituted in 1891 by the commissioner of public works of the city of New York to acquire certain real estate in the town of Carmel, in Putnam county, for the maintenance, preservation and increase of the supply of pure and wholesome water for the city. It related originally chiefly to the fee of the land under water constituting the bed of Lake Gilead; but it was also designed to extinguish any adverse claims which might exist in reference to a number of other pieces of property in Putnam and Westchester counties, which the municipal authorities of New York had previously attempted to acquire for like purposes. The matter was subsequently extended by stipulation so as to refer to the same commissioners of appraisal the question of the compensation to be made to the same claimants for an undivided third part of the mines and minerals in certain lands in the town of Southeast, in Putnam county, which the city likewise sought to acquire.

The commissioners awarded the claimants $4,200 for the fee of Lake Gilead, and merely a nominal sum for the mines and minerals. The claimants now appeal from the order of the Special Term confirming the report of the commissioners, and also from an order denying a motion to set aside the report on the ground that the commissioners had not taken the statutory oath, and because two of the commissioners were neither residents of the county where the property of the claimants was situated nor residents of some adjoining county.

The principal question presented by the appeal from the order confirming the report is whether the commissioners did not adopt

an erroneous measure of damages in excluding from consideration, as an element in the market value of the property to be taken, the existence of any demand for such property on the part of the city of New York. The record plainly shows that they proceeded upon the theory that the existence of any such demand could not be considered as an element of market value. So far as the rule which they followed .was merely a decision that the desirability of the particular property to the city in view of its necessities was not the legal measure of damages it was correct. The commissioners went much further than this, however, and practically held that the availability of the property for use in connection with the water supply of New York city could not be taken into account by them in determining what was the fair market value of the premises.

In so doing it seems to me they disregarded the great weight of authority as to the proper measure of compensation in cases of this kind.

A question similar to that before us arose in the case of *The Trustees of College Point* v. *Dennett* (5 T. & C. 217), which was decided by the General Term of this department more than twenty years ago. It was a proceeding to acquire an interest in a pond, from which to supply the village of College Point with water. The owners desired to prove that the pond possessed a value as a source of water supply to cities, and sought to show that there was only one other pond available for like purposes within an area of six miles. They were not permitted to do this, and the court held that the commissioners erred and set aside their report.

In *The Matter of the New York, Lackawanna & Western R. R. Co.* (27 Hun, 116) the land sought to be taken was peculiarly adapted for railroad purposes. The commissioners took that fact into consideration in awarding compensation to the owner, and the General Term of the third department sustained their action in so doing, and in refusing to value the premises as agricultural lands only. "Here was a narrow strip of land," said BOARDMAN, J., "formerly used as a way and only of value for a way. The owner holds it for such purpose only, expecting the time will presently come when he can utilize it to his own profit or sell it to some one else for such purpose. Why, then, are not the purposes for which it is held and the uses to which it is adapted proper elements in its

value ? " The same question may be asked with reference to Lake Gilead in the present proceeding. To ignore its adaptability to furnish water to the city of New York is to leave out of consideration the most important element which gives it any value in the market.

The doctrine that the fitness of lands for particular purposes is an element in estimating their market value in condemnation proceedings is supported by the decision of the Supreme Court of the United States in the case of *The Boom Co.* v. *Patterson* (98 U. S. 403). There the property was desired by a boom company for the purpose of constructing a boom in the Mississippi river, and was peculiarly adaptable for such purpose. The value was assessed at more than $9,000, having reference to the adaptability of the lands to the construction of a boom, but at only $300 if such fitness were left out of view. The Supreme Court affirmed the judgment for the larger amount, holding that their suitableness for forming a boom was a fact which the owner had a right to insist upon as an element in ascertaining the value of his lands.

Mr. Justice FIELD, in the course of the opinion, cites with approval the case of *Young* v. *Harrison* (17 Ga. 30) which was a proceeding to acquire a site for the abutment of a bridge, wherein the Supreme Court of Georgia held that the value of the land for a bridge site was to be considered in assessing the compensation to be made to the owner. To the same effect is a well-considered decision in an Arkansas case (*L. R. Junction Ry. Co.* v. *Woodruff*, 49 Ark. 381), where the land was to be condemned for the erection of a railroad bridge. The contention was, that as the defendant had no right to bridge the Arkansas river, while the plaintiff possessed such right, the defendant, as owner, could not have any damages based upon a use to which he could not put the property himself. The court, however, refused to adopt this view, holding that the probable demand there may be for suburban property for depot and bridge sites is a recognized factor in the market value of such property.

A similar rule as to the measure of compensation, where the power of eminent domain is exercised for the acquisition of reservoir sites, has been laid down in a number of cases. (*San Diego Land Co.* v. *Neale*, 78 Cal. 63; *Spring Valley Water Works* v. *Drinkhouse*, 28 Pac. Rep. 681; *Alloway* v. *Nashville*, 88 Tenn. 512.). In the case last cited it is well said that market value

" includes every element of usefulness and advantage in the prop-
erty. If it be useful for agriculture or for residence purposes, if it
has adaptability for a reservoir site or for the operation of
machinery, if it contains a quarry of stone or a mine of precious
metals, if it possesses advantages of location or availability for any
useful purpose whatever, all these belong to the owner, and are to
be considered in estimating its value."

Without further citation of authorities, I think it is sufficiently
clear that the commissioners in the case at bar erred in excluding
from consideration an essential element in the market value of the
property under consideration — that is to say, its adaptability to fur-
nish a portion of the water supply of the city of New York. It fol-
lows that their report should be set aside.

This conclusion renders it unnecessary to pass upon the objections
to the form of oath, and to the residence of two of the commission-
ers, except so far as some suggestion from the General Term may be
useful upon the new appraisal which must be had. In my opinion,
the omission of the word " faithfully " from the constitutional oath
which the statute required the commissioners to take, was a material
omission, sufficient to invalidate the proceeding unless the parties
can be held to have waived the objection by going on without call-
ing attention to the defect until the report was made. (*Merritt* v.
*Village of Portchester*, 71 N. Y. 309.) As to the non-residence of
two of the commissioners, that was a matter of which the claimants
had notice by the terms of the order appointing them. It did not
affect the jurisdiction, and the objection now comes too late, having
clearly been waived by the conduct of the claimants.

CULLEN, J., concurred.

Order confirming report of commissioners reversed and report set
aside, with ten dollars costs and disbursements. A new hearing
directed to be had before other commissioners.