In the Matter of the Application of BRONX PARKWAY COM-
MISSION, Appellant, to Acquire Title to Lands of ROBERT E.
FARLEY and Others.

ROBERT E. FARLEY, Respondent.

Second Department, June 11, 1920.

Eminent domain — condemnation of lands by Bronx Parkway Com-
mission — market value of lands taken — award for probable
prospective use — distinction between probability and possibility
of future use — expert opinion — powers of commissioners —
award not reversed for mere errors in admission or exclusion of
evidence.

On an appeal from a proceeding by the Bronx Parkway Commission to
acquire title to lands by condemnation every intendment is in favor of
the report of the commissioners awarding damages.

Evidence given on such proceeding examined, and *held*, that the commis-
sioners had not adopted an erroneous principle of assessment so as to make
the award excessive or palpably unjust.

In such proceeding the market value of the land may be considered in the
light of its prospective use, even though the land be vacant, and expert
opinion as to such use is in a sense " speculative."

There is a difference between the probable and possible future use of lands,
and the former may be considered in determining its market value in
condemnation proceedings and this may be established by expert opinion.
It is not the speculative feature of such testimony in itself that makes it
incompetent, but rather speculation and remoteness.

On the evidence, *held*, that the wide difference of opinion as to market value
given by the experts of the respective parties did not indicate that an
erroneous principle was adopted by the commissioners in making an
award.

The opinion of experts as to the availability of lands for future uses, while
admissible on the question of market value, is not binding upon the com-
missioners who are entitled to exercise their own judgment and may arrive
at their conclusion in disregard of the figures of any or all experts.

In such proceeding mere errors in the admission or exclusion of evidence are
not justification for reversal.

APPEAL by Bronx Parkway Commission from an order of
the Supreme Court, made at the Westchester Special Term and
entered in the office of the clerk of the county of Westchester
on the 1st day of October, 1919, which confirms the report of
the commissioners of appraisal appointed in condemnation
proceedings.

*Charles Harvey Peck* [*Theodosius Stevens* with him on the brief], for the appellant.

*John M. Digney,* for the respondent.

JENKS, P. J.:

Every intendment is in favor of the report. (*New York Central & H. R. R. R. Co.* v. *Newbold,* 166 App. Div. 195, and cases cited.) I am not convinced that the commissioners followed an erroneous principle which affected the award or that the award is so excessive as to be palpably unjust.

The alleged error of erroneous principle is the adoption of testimony of " speculative development." The defendant adduced considerable testimony from witnesses of whom several were of high standing and of great experience, as to the availability of this land for many different industrial purposes. The petitioner, in turn, called several witnesses of like standing, with particular reference to the availability of the land for railway purposes, who testified to the remoteness of such requirement and the cost of such improvement

The fact that the land is vacant makes such testimony in a sense " speculative," which word in its origin implies a vision or an outlook. But the marketable value of the land may be considered in the light of its prospective use. Such is the significance of the word " available " in the expression of the Supreme Court of the United States, " its fair market value for all available uses and purposes." (*United States* v. *Chandler-Dunbar Co.,* 229 U. S. 81.) We have stated the rule in *Matter of Bronx Parkway Commission* (191 App. Div. 212, per PUTNAM, J.). And as to the competency, see, also, *Matter of Daly* v. *Smith* (18 App. Div. 197, CULLEN, J.); *Matter of Simmons* (*Ashokan Reservoir, Sec. No. 6*) (130 id. 350; affd., 195 N. Y. 573); *City of Syracuse* v. *Stacey, No. 1* (45 App. Div. 254; affd., 169 N. Y. 231); *Matter of Gilroy* (85 Hun, 424); 2 Lewis Em. Dom. [3d ed.] § 707. In *Matter of Gilroy* (85 Hun, 424) the court, per WILLARD BARTLETT, J., in a learned discussion says, after citation of *Alloway* v. *Nashville* (88 Tenn. 512): " In the case last cited it is well said that market value ' includes every element of usefulness and advantage in the property. If it be useful for

agriculture or for residence purposes, if it has adaptability for a reservoir site or for the operation of machinery, if it contains a quarry of stone or a mine of precious metals, if it possesses advantages of location or availability for any useful purpose whatever, all these belong to the owner, and are to be considered in estimating its value.' "

If, however, by " speculative " we describe testimony that is purely theoretical — that rests upon the mere physical possibility, as distinguished from physical possibility *and* probability of use in view of the circumstances — then the testimony is objectionable.  Evidence that a clearing in the forest was adaptable for villa sites might be objectionable; the same evidence as to a like tract in the suburbs of a city might be competent.  It is not the speculative feature of such testimony, in itself, that makes it incompetent, but speculation and remoteness. The difference is between probability and possibility.  It is not necessary, if possible within the confines of an opinion, to analyze the testimony of these witnesses as to availability. The printed record before us consists of nearly 1,500 pages, and a large part is the examination and cross-examination of these experts.  Suffice it to say that their testimony, while speculative, is also practical to a degree, in that it relates to the character of the land, its location, the contiguous territory, the present uses of neighboring land and the need of meeting the laws of demand and supply in view of the towns and cities of the neighborhood, including the city of New York.

As the commissioners did not hand down any opinion, and as the record does not reveal specifically that they adopted the theory of the availability experts in the determination of the amount of the award, the contention as to erroneous principle is purely argumentative.  This contention asserts that the testimony of the availability experts was assumed by the real estate experts who testified directly as to value.  Of such experts there were three called by the defendant and two by the petitioner.  The argument of the petitioner, as I read it, is as follows: The defendant's real estate experts testified to values in round numbers between $337,000 and $374,000, the petitioner's experts to values between $40,000 and $60,000 (the latter figure should be larger, see *infra*); the testimony of the defendant's real estate experts was based on the testimony

of the defendant's availability experts, *therefore the commissioners* adopted a wrong principle that affected their award. One might expect that the conclusion rested at least upon the fact that the commissioners' award approximated the values of these real estate experts of the defendant. But the award of the commissioners was $129,000 — less by $208,000 than the lowest figure of those real estate experts. The petitioner, however, asserts that it is " palpable " that the commissioners adopted the speculative theory, " inasmuch as they disregarded the opinions of West and Banks, the petitioner's witnesses, on the question of damages." And, referring not to the difference between the experts of the respective parties, *but to the difference between the commissioners and the petitioner's experts,* the learned counsel say: " Such a wide difference of opinion cannot be honest or reasonable upon the question of the market value of the property. The disparity, therefore, necessarily establishes the conclusion that an erroneous principle entered into the making of the award." The testimony of experts as to the value of land may be of great weight in such proceedings. But the expert produced by a party is not a witness of circumstance, but of choice. Naturally, the party calls the witness because the witness is favorable; such testimony generally " cannot fail  *  *  *  to be warped by a desire to promote the cause in which they are enlisted." (*Ferguson* v. *Hubbell,* 97 N. Y. 514. See, too, *Clark* v. *Condit,* 21 N. J. Eq. 322, 323.) On the other hand, the commissioners are chosen by the court charged to select competent and indifferent men, and are much more within the category of the jury referred to in the parallel drawn by EARL, J., in *Ferguson* v. *Hubbell* (*supra*).

The learned counsel for the petitioner, of course, recognizes that there was a wide variance between its real estate experts and those of the defendant, but he would eliminate the opposite experts by the statement that their testimony " was based on this speculative development. This appears not only from their statements, but their valuations are irrational in any other view." Let us examine the first part of this statement. It does appear that these three real estate experts read or heard and did to a degree consider the testimony of the availability experts, and took into con-

sideration their opinions as to the presence of building sand and of rock in the quarry and its value, and the feasibility of the practical or the engineering problems discussed by the availability experts. It does appear that these experts considered some of the maps, plans, profiles and charts that had been introduced by the petitioner. But they were not forbidden to do so. They could give opinions as to the value of property " based upon facts which they have observed, and they may give opinions on other matters which are the proper subject of expert evidence based upon facts known to them or proved by competent evidence." (*Doyle* v. *M. R. Co.*, 128 N. Y. 488, 499; *Whiton* v. *Snyder*, 88 id. 308; 2 Lewis Em. Dom. [3d ed.] § 657.)

The assumption that these real estate experts determined their opinions as to values by the testimony of the availability experts is not justified by the record.

The tract of the defendant comprises 21.76 acres, the land taken therefrom 12.58 acres, and the residue 9.17 acres. The tract is 1,800 feet long, and its width varies from 500 to 600 feet. The part taken is 1,200 feet long and of the same relative width. The Bronx river meanders through the land for 1,580 feet. The land is in the city of White Plains and less than half a mile from the main street. It adjoins the tracks of the New York Central Railroad Company for 1,200 feet. Three-fourths of the land taken was rough and irregular, in part low, but rising to a steep bluff. This part constitutes one parcel (16); of the four other parcels, two are contiguous to 16; 3 and 4 are separated from each other and have long been divided from 16 by the railroad tracks. The surface of the land along the railroad is level for 200 feet from the easterly line of the land, and is 15 feet below the tracks; thence it rises toward the westerly line. There are deposits of building sand, of rock, and there are springs of water. The first real estate expert, a man of large business experience in real estate in this territory, testified that he figured his value from sales made by and known to him in the vicinity and along the river. He testified to a number of sales in the vicinity of this land. The prices of some of them, as elicited on cross-examination, were stated in one instance to be $.54 a square foot, in another $1.04, in another $1. He considered

the land as more or less available for business uses, some of it more than other parts, and others not available. He specified the kind of business use that he had contemplated. The second witness, qualified as was the first witness, was familiar with these sales, and he referred to another sale of railroad siding property in Scarsdale at $1.80 a square foot. He testified that he had made careful inspection of the territory and had made his estimate taking into consideration certain elements of value which he specified, and that such estimate was the result of 20 years' experience in the purchase, sale and appraisement of real estate in the vicinity and the study of prices realized for such property capable of like uses. The third real estate expert, a man of large affairs and of responsible places in relation to such territory, and who had made recent large sales of territory similar to this land, testified that such sales had been made for industrial purposes. His testimony embraced 10 actual sales, and the prices were stated.

There is nothing in the standing or the experience of the petitioner's two real estate experts that required preference for their opinions. The first is a dealer in acreage property, residential building lots and farms, but was familiar with other sales and with this tract. He had assumed that the area taken was 19½ acres only. The argument that upon the corrected figures of area (21.76 acres) his figure would be *pro rata* $70,514, is entirely proper. The other expert adds to the number of witnesses, and consequent weight, but nothing by way of newness. His estimate was $45,000. I think the difference between the clashing real estate experts can be explained by the fact that the defendant's experts did consider the element of availability while the petitioner's experts paid little heed thereto. But the defendant's experts were entitled to consider that element. But they testify that their conclusion was based upon their long familiarity with the territory, their personal study of the land, their sales and purchases, or their knowledge of sales and purchases, and the prices which had been paid therefor. Examination and cross-examination both revealed to the full exactly the elements that were in the contemplation of these witnesses. We must not forget that the question is whether the commissioners erred in theory or

made an award palpably unjust, lest we for the moment think that the figures of these experts are substantially those of the award. The commissioners, be it remembered, departed in their award radically from the valuations of all of these expert witnesses, and from those of the defendant by more than $200,000.

To restate the proposition of the petitioner in concrete terms, it is that although the real estate experts of one party testify to a value of $350,000, and the real estate experts of the other party testify to a value of $60,000 ($70,000), that award was affected to the prejudice of the latter party by the adoption of an erroneous principle, because such variance between the award and the valuation of the experts of the latter party cannot be honest and reasonable as to the market value of the property. Why must such variance be ascribed to dishonesty and unreason on the part of the *commissioners?* We have yet to learn that the commissioners are convicted of the adoption of an erroneous principle because their award varies even greatly from the set of experts called by either party. This attribute of infallibility and conclusiveness to any expert or set of experts of either party is novel indeed.

The amount awarded by the commissioners is within a fraction of 20 cents a square foot.

If all that the petitioner asserts is true — that the real estate experts of the defendant did adopt a speculative value that was remote, how does that avail, in view of the fact that the award is $200,000 less than the values of these experts? It avails nothing unless the mere fact that the award exceeds the highest award of the petitioner's real estate experts by $69,000 (or upon the proper correction, $59,000) demonstrates that the commissioners adopted a wrong principle, or that the amount was palpably unjust.

The commissioners, of course, are expected to consider the evidence. But their function is not merely to pass upon the credibility of witnesses, especially experts produced by the parties, or to decide which set of such expert witnesses reveals itself as more correct in estimate, and then slavishly adhere to that set. The commissioners are to exercise their own judgment, and they may arrive at their conclusion in disregard of the figures of any or all experts. They are " untram-

meled by technical rules of evidence and unrestricted as to their sources ʹof information. * * * They shall be guided by their own judgment and experience, rather than by the opinions of witnesses." (*City of Syracuse* v. *Stacey, No. 1, supra.*) Mere errors in the admission or exclusion of evidence are not justification for reversal.

These are familiar principles which are declared in *New York Central & H. R. R. R. Co.* v. *Newbold* (166 App. Div. 195); *Matter of Castle Heights Water Co.* v. *Price* (178 id. 687); *City of Syracuse* v. *Stacey, No. 1* (*supra*); *Matter of Daly* v. *Smith* (*supra*); *Matter of City of New York* (198 N. Y. 84, 91). The case is somewhat analogous to *Matter of Grade Crossing Commissioners* (52 App. Div. 122; affd., 164 N. Y. 575).

I recommend affirmance, with ten dollars costs and disbursements.

Present — JENKS, P. J., MILLS, PUTNAM, KELLY and JAYCOX, JJ.

Final order unanimously affirmed, with ten dollars costs and disbursements.