[Civ. No. 22215. Second Dist., Div. One. Apr. 16, 1957.]

AMERICAN FEDERATION OF MUSICIANS, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; WILLIAM (BILL) ATKINSON et al., Real Parties in Interest.

Bodkin, Breslin & Luddy for Petitioner.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, for Respondent.

Fendler & Lerner, Harold W. Fendler and Daniel A. Weber for Real Parties in Interest.

DORAN, J.—An action for declaratory relief, injunction, accounting, damages, etc., was instituted in superior court on November 29, 1956, by William (Bill) Atkinson, and others, "Individually and on behalf of all other musicians, leaders, contractors, arrangers and copyists, . . . similarly situated and who are or have been employed by the defendants described in the complaint as the 'defendant motion picture companies,' " etc. Named as defendants therein are the petitioner, American Federation of Musicians, a labor union, and a number of motion picture corporations all of whom were parties to a series of contracts effective June 1, 1952, or February 1, 1954, entered into between the federation and motion picture companies relative to the exhibition on television of motion pictures previously made for theatrical use.

As stated in the complaint, during the years 1946 and 1948, the federation, acting as collective bargaining representative of musicians employed by motion picture companies, entered into certain agreements with said companies, governing wages, hours, etc., referred to as Hollywood film labor agreements. By the terms thereof, the motion picture companies were forbidden from using or exhibiting any such motion pictures on television without the consent or agreement of the federation. The aim of such agreements was to "give recognition to and preserve the right of all musicians who performed services in connection with the production of any past or future motion picture," to receive additional wages or compensation for such services in the form of so-called re-use payments in the event of subsequent use or exhibition of such motion picture on television."

In September, 1952, the federation entered into a collective bargaining agreement with the motion picture companies, terminating as of January 31, 1954, known as the "1952 Hollywood film-TV labor agreement," which specifies the

amounts payable to musicians, etc., employed in the original film productions, and providing that in the case of inability to find the musicians entitled thereto, contributions in an equal sum should be made to Samuel R. Rosenbaum as trustee.

It is further alleged that as a part of the same transaction, the motion picture companies were required to execute a so-called trust agreement under which such companies would pay to the trustee, 5 per cent of gross revenues received from the re-use of motion pictures on television, such arrangement being known as the "Music Performance Trust fund," to be employed by the trustee "for the purposes and objectives of arranging and organizing the presentation of personal performances (free of charge to the public) by instrumental musicians," to contribute "to the public knowledge and appreciation of music."

In February, 1954, the federation again entered into a similar agreement known as the "1954 Hollywood film-TV labor agreement," which provides for "re-use payments." In connection therewith, the motion picture companies were again required to execute trust agreement calling for similar 5 per cent payments to the trustee, referred to as "royalty payments."

The complaint further avers that the specified re-use payments were regularly made to musicians who had participated in the making of the original motion pictures later used on television from the effective date of the 1952 Hollywood film-TV labor agreement until about June 9, 1955. On this date, it is alleged, the international executive board of the federation authorized its president, James C. Petrillo, "to take such measures as he might deem fit to cause to be diverted from the plaintiffs to said trust fund the re-use payments aforesaid, upon the ostensible or alleged ground that the musicians who rendered the services in such motion pictures could not be located, well known that . . . said excuse was untrue." Thereafter, the federation "arbitrarily and without justification, diverted and deprived the plaintiffs of any and all further or additional re-use payments."

The complaint then alleges that the federation in so doing, "acted without the plaintiffs' consent and in violation of its fiduciary duties and responsibilities to the plaintiffs as their exclusive collective bargaining representative," and that "said trust fund policies and the Federation's acts and omissions in furtherance thereof were discriminatory and oppres-

sively unfair to the plaintiffs.'' Written appeals to the federation and personal appearances in reference thereto, for the purpose of securing redress of the grievances in question, were unavailing, and it is alleged that plaintiffs have exhausted all avenues of relief within the federation.

In addition to injunctive and declaratory relief, plaintiffs, in various causes of action, seek a judgment against the federation in the sum of $1,495,000 under the fourth cause of action, for loss of re-use payments; under the fifth count, $2,937,850 for loss of royalty payments; and under the eighth cause of action, a judgment of $200,000 against the defendant trustee.

On December 27, 1956, Judge Leon T. David of the superior court granted the plaintiffs' motion for inspection of records of the American Federation of Musicians, including (1) ''List of all signatories to all collective bargaining agreements'' between the federation and defendant motion picture companies, ''dated either September 2, 1946 or September 1, 1948, or any extensions thereof; (2) All collective bargaining agreements hereinbefore specified . . .''; (3) List of all signatories to the respective television film labor agreements . . . effective June 1, 1952, or February 1, 1954; (4) all such television film labor agreements referred to in Paragraph 3; (5) List of all signatories to each and all agreements executed by the . . . Federation . . . with persons, firms, or corporations engaged either in the production or exploitation of motion picture films and sound tracks . . . together with the dates of execution . . . ; (6) Each and all such agreements . . . ; (7) List of all producers or exploiters of motion picture films who have executed the amendment effective June 15, 1955 to the television film labor agreement effective February 1, 1954; (8) Each and all such amendments . . . ; (9) Each and all existing agreements to which the . . . Federation . . . is signatory, which provides wholly or in part for any payment to Samuel R. Rosenbaum as trustee, of any sum or amount as consideration, compensation, royalty payment or any other kind of payment however classified, for the use and exploitation upon television of any motion picture originally produced for exhibition in motion picture theatres by the defendant motion picture companies, or any other motion picture producer.''

The present petition for writ of mandate was then filed by the federation seeking to require the respondent superior court to show cause why its order for inspection of the federa-

tion's records should not be revoked. The petition alleges that the federation possesses no such lists of signatories to motion picture contracts and did not have all of the contracts requested; that such contracts with other companies would not be relevant or admissible in evidence; that revelation of the contents of its contracts providing for varying terms of payment would be "harmful to the Petitioner and to its members" and that petitioner has no appeal from the order made and no other adequate remedy.

In opposing said petition, it is argued that an order granting inspection will not be vacated in the absence of a clear abuse of discretion; that the complaint may properly be considered in support of such a motion; that where the object of litigation is to redress a breach of fiduciary duty, a more liberal rule in respect to inspection is to be applied; that the documents requested are material and relevant and are adequately described; and that Judge David was justified in assuming that the federation "preserved at least either the originals or copies of all important documents which were directly related to the administration of (its trust)."

The federation's petition for writ of mandate to compel the revocation of the trial court's order for inspection of documents must be denied. ■ As said in *Construction Products Co.* v. *Superior Court,* 103 Cal.App.2d 403, 404 [229 P.2d 399], "In determining the propriety of an order under section 1000, Code of Civil Procedure, it must be borne in mind that the trial court's action thereunder is discretionary and that all intendments are in favor of the validity of such order. Accordingly, such action will not be annulled unless a clear abuse of that discretion appears. (*Milton Kauffman, Inc.* v. *Superior Court,* 94 Cal.App.2d 8, 16 [210 P.2d 88].)" The Construction Products case involved an action for fraud and it was held that the trial court did not exceed its jurisdiction in ordering the defendants to make available to plaintiff "all . . . books, accounts, documents and papers now in the possession and/or under the control of defendants . . . in connection with . . . and relating to the business, operations and financial condition of defendant." More recently, this rule finds approval in *Dowell* v. *Superior Court* (1956), 47 Cal.2d 483 [304 P.2d 1009].

No adequate reason has been advanced by petitioners why the above principle should not govern the instant case. Nor does the record disclose anything in the nature of an abuse of discretion in the granting of the order for inspection of the

federation's records. Without that right the plaintiff musicians would be helpless to discover or uncover those facts and practices which, as beneficiaries under the original re-use contracts plaintiffs are entitled to know. ■ Indeed, section 1000 of the Code of Civil Procedure, providing for such inspection was obviously enacted to enable a party litigant to discover such vital information which, by reasons of an opponent's control, would otherwise be unavailable for judicial scrutiny. Petitioner's arguments to the contrary are untenable.

■ While the merits of the controversy between the musicians and the union are of no present concern, it is entirely proper to consider the allegations of the complaint. As said in *Union Trust Co.* v. *Superior Court,* 11 Cal.2d 449, 455 [81 P.2d 150, 118 A.L.R. 259], "In determining the question of materiality of the records sought to be inspected, the trial court was not limited to a consideration of the affidavit, but was also entitled to consider the contents of the pleadings filed."

■ Section 1000 of the Code of Civil Procedure, providing for inspection, is remedial in nature and therefore should be liberally construed and, as has been said, use of the remedy should be encouraged rather than discouraged. Nor is inconvenience resulting from compliance with such an order any objection to its issuance. There is nothing in the present record to indicate that the order in question was not granted after due deliberation and the consideration of all relevant facts and circumstances. Certainly there has been no manifest abuse of the broad discretion which is and must be reposed in the trial judge.

■ Arguments advanced by the federation that revelation of the desired information "would be harmful to the Petitioner and its members" and therefore should not be divulged, is not persuasive. The re-use agreements were negotiated by the federation itself for a legitimate and beneficent object. If, as alleged in the complaint, the federation later found it advantageous for its own purposes to divert money so received from the musicians entitled thereto, it cannot be said that the plaintiff musicians entitled to these reuse payments have no right to a full disclosure of all pertinent facts in connection with the transaction.

The affidavits made in support of the motion for order of inspection, when considered in connection with the complaint, must be deemed adequate to support the order made. Like-

wise the description of the desired documents was amply sufficient to acquaint the federation with the nature of records sought to be inspected.

The alternative writ heretofore issued is discharged and a peremptory writ is denied.

White, P. J., and Fourt, J., concurred.