[Civ. No. 9768. Third Dist. July 7, 1959.]

GLENN E. RUST et al., Petitioners, v. ROBERT E. ROBERTS, as Judge of the Superior Court of El Dorado County, Respondent; THE PEOPLE, Real Party in Interest.

Downey, Brand, Seymour & Rohwer and Frank Finnegan for Petitioners.

Stanley Mosk, Attorney General, John Morris and Marcus Vanderlaan, Deputy Attorneys General, for Respondent and Real Party in Interest.

VAN DYKE, P. J.—There is pending in the Superior Court for El Dorado County an action in condemnation brought by the state to condemn a body of land belonging to petitioners. Petitioners have answered the complaint and a pretrial order has been made. Petitioners served upon the state certain interrogatories. The state noticed a hearing of objections to the interrogatories and of a motion to strike the same. A hearing was held. The respondent court sustained the objections to the interrogatories, and granted the motion to strike. Thereupon petitioners began this proceeding in mandate, seeking to obtain a peremptory writ ordering the respondent court to set aside and reverse its orders. This court issued its alternative writ, the matter has been heard upon the petition and the return and has been submitted.

These are the interrogatories:

"1. Has the State caused a survey to be made of the acreage herein sought to be condemned?

"2. What was the name and address of the person in charge of making said survey?

"3. When was it made?

"4. What is the amount of the acreage the State seeks to condemn by this proceeding?

"5. How is this acreage arrived at?

"6. Has the State made or caused to be made appraisals of the market value of the property herein sought to be condemned?

"7. What are the names and addresses of each of the appraisers who have made such appraisals for or on behalf of the State of said property?

"8. What was the total amount declared by each such ap-

praiser to be the fair market value of the property herein sought to be condemned?

"9. What values per acre were used in arriving at the appraisal figure in each instance?

"10. When were the appraisals made and as of what date do they declare the fair market value of said property?

"11. How much was each appraiser paid by the State to make such appraisal and report?

"12. What are the financial arrangements for the payment of fees by the State with the appraisers selected by them in connection with the testimony to be given by each of them in this action?

"13. What does the State contend to be the highest and best use of the property herein sought to be condemned?

"14. Upon what facts is such contention made by the State?

"15. Upon what facts is it contended by the State that the highest and best use of the subject property is not for residential subdivision purposes?

"16. Does the State contend that the acreage in question is not suitable for residential subdivision purposes?

"17. Does the State contend that any part of the acreage in question is not suitable for residential subdivision purposes? If so, what part?

"18. If the answer to the two preceding questions is yes, upon what facts does the State contend that such acreage, or any part thereof, is unsuitable for residential subdivision purposes?

"19. If the State contends that the acreage in question has any qualities or location that limits or restricts the value of said acreage, or any part thereof, for residential subdivision purposes, what does the State contend those limiting or restrictive qualities or locations are?

"20. What other acreages has the State acquired for the same or similar purposes within the area on or near Folsom Lake? Please give the names and addresses of the person or persons from whom the acreages were acquired, the dates of said transactions, the location of said acreages with respect to the acreage which is the subject of this lawsuit, the amount of the acreage acquired in each instance and the amount paid by the State for such acreage in each instance?

"21. Does the State contend that any of the acreages acquired by it as a result of those transactions contained within the preceding paragraph are not comparable property as

compared to the subject property? If so, designate which acreages and transactions are not comparable and why the State contends they are not comparable.

"22. Does the State contend that any of the acquisitions of property described in the two preceding paragraphs were other than free and voluntary acquisitions from the standpoint of the State and the person or persons from whom acquired? If so, designate which ones were other than free and voluntary and state the reasons for such contention."

The question before this court is whether the trial court abused its discretion in ruling as it did. (*American Fed. of Musicians* v. *Superior Court*, 150 Cal.App.2d 165 [309 P.2d 874]; *Heffron* v. *Los Angeles Transit Lines*, 170 Cal.App.2d 709 [339 P.2d 567].)

The first three interrogatories concern a survey of the property. Since it has been made to appear in these proceedings that no survey was made the issues as to these interrogatories have become moot.

 Interrogatories 4 and 5 concern the acreage being condemned. It appears that the description used in the complaint is a metes and bounds description and that the property being condemned is a single body of land which has been owned by petitioners for approximately 20 years. It may safely be assumed that they are familiar with the property and its extent. The interrogatories are trivial. Mandate will not issue where its issuance will serve no useful purpose. (*Hutchison* v. *Reclamation District No. 1619*, 81 Cal.App. 427, 432-434 [254 P. 606].)

 Interrogatories 6 to 10 deal with appraisals of the property which have been made by the state, request the names and addresses of the appraisers, and the contents of the appraisers' reports. It appears by affidavits presented to the trial court that the attorneys for the state requested the state to employ appraisers to go upon the property to investigate its nature and uses, to appraise its value, and to report. It also appears that these things were done and that the state communicated the matters reported and delivered the reports to its attorneys in confidence. The state has claimed that these matters are privileged under the attorney-client privilege declared by statute. The claim is good. Code of Civil Procedure, section 2016, subdivision (b), provides:

". . . All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure. . . ."

 The general principle involved in the attorney-client privilege has been stated in this way in 8 Wigmore on Evidence, third edition, section 2292:

"Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived."

Interrogatories 6 to 10 inclusive are covered by the privilege. (*Holm* v. *Superior Court,* 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722] ; *City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418].)

 Interrogatories 11 and 12 inquire as to the amount paid the appraisers by the state or, alternately what financial arrangement for payments have been made. It is not contended that answers to these questions would directly prove or disprove value which by the pretrial order has been stated to be the only issue to be tried. But it is argued that the answers might be valuable for impeachment purposes.

 Assuming this to be true, we think, as was said in a similar situation in *Lynch* v. *Henry Pollak, Inc.,* 1 F.R.D. 120, 121, that, "While examinations under the new rules may be had for the purpose of obtaining information upon which to cross-examine a party or witness . . . such examination must be had on matter relevant to the subject matter involved in the pending action. We do not think that this examination on collateral matters comes within the scope of the rules."

 Interrogatories 13 through 19 request that the state inform petitioners what use it contends is the highest and best use of the land and as to the facts upon which such contention is based. Such matters are not relevant to the issue of value, being merely arguments and theories that the state may advance through its witnesses on value. Indeed, the state may well want to use a witness with whose theories as to use of the property the state does not agree. The state's contentions cannot be put in evidence even though its expert witnesses will, in all probability, when testifying on value, testify also as to what is the highest and best use of the property. They will probably also testify as to the various uses to which the property can be put. But the state's contentions pro or con upon the subject matter of the inter-

rogatories are not proper subjects of discovery. Petitioners argue that answering these interrogatories might serve to narrow the issues at trial. (See *Territory of Alaska* v. *The Arctic Maid*, 135 F.Supp. 164.) We think not. Evidence may be given by either party as to the uses to which the property may be put and answers to the interrogatories would neither confine petitioners in the scope of their proof nor prevent the state's witnesses from testifying as to a use which in their opinion is the highest and best use of the property. We see no useful purpose to be served by these interrogatories.

Interrogatory 20 asks for facts relevant to the issues and resting within the knowledge of the state. The interrogators want to know what acreages the state has acquired for the same or similar purposes within the general area in which the lands being taken are situated. It is requested that the state give the names and addresses of persons from whom such acreages have been acquired, the dates of the transactions, the locations of the acreages acquired with respect to that which is being taken, the amount of land acquired and the amount paid by the state therefor. The matters here inquired into are relevant to the issues and the answers to the questions may lead to further discovery. The argument of the respondent is that the answers to these questions can be obtained by other means than interrogatories addressed to the state. That answer is not sufficient. It is apparent that since the state has acquired the lands concerning which the questions are asked it has at hand the information requested. It is not sufficient to say that petitioners could work out the answers to the questions by searching the records of the county in which these lands are situated and the records of the superior court of that county and by examining the public records of the state agencies involved. This is not a case where the petitioners are attempting to compel the state to perform their work for them. It is a case where they ask for relevant factual information readily to be supplied by the state. The interrogatory must be answered.

Interrogatories 21 and 22 again ask for contentions of the state, this time concerning these acreages already acquired. The petitioners want to know what the state's opinions are concerning the comparative values of the lands acquired and the lands here sought to be condemned. What we have heretofore said concerning interrogatories asking for such information applies here.

Let a peremptory writ issue requiring only that respondent court set aside its order relative to Interrogatory Number 20 and to enter an order directing that answer thereto be made.

Schottky, J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.