57 Cal.2d 346 (1962)
THE PEOPLE ex rel. Department of Public Works, Plaintiff and Respondent,
v.
MARY E. DONOVAN, Defendant and Appellant.
S. F. No. 20842. 
Supreme Court of California. In Bank. 
Feb. 20, 1962.
 Johnson, Thorne, Speed & Bamford and John E. Thorne for Defendant and Appellant.
 Holloway Jones, Jack M. Howard, Joseph F. DeMartini, Lee Tyler and Robert E. Reed for Plaintiff and Respondent.
 WHITE, J.
 This is an appeal by Mary E. Donovan from a judgment entered upon a jury verdict awarding compensation in the amount of $13,500 in an eminent domain proceeding, and from orders striking certain affidavits in support of and denying a motion for a new trial.
 Defendant was the owner of a lot located near the City of San Jose-County of Santa Clara Government Center. She purchased the property in 1954, and used it and four dilapidated buildings thereon for storage purposes for her used furniture and antique business. In October 1958, the State of California took possession of the lot for a freeway project.prior thereto and at that time the lot was zoned R-1 (single family residences) and defendant's use thereof was nonconforming. *350
 At the trial, commenced in November 1959, there was no direct testimony that the City of San Jose contemplated an immediate change of zoning by virtue of the proximity of the property to the government center, although there was evidence of a change in the general character of the neighborhood. The property had enhanced in value during defendant's possession by reason of the possibility of the development of surrounding property. Three opinions of the market value at the time of the taking were submitted. Defendant claimed a value of $35,000, and her expert placed the value at $29,000. Such valuations took into consideration the potential for commercial purposes not permitted by the then current zoning regulation. The plaintiff's lone expert testified that the market value for single family residence purposes was $8,500.
 A further expert opinion was offered in rebuttal by the defendant, who subpoenaed as a witness one who had made an appraisal of the property for the state, but who had not theretofore testified. The court, after objection made based on the attorney-client privilege and that the offer was not proper rebuttal evidence, did not permit this witness to testify as to his appraised value.
 In its instructions to the jury the trial court stated:
 "The amount that you are to fix as the value of the property taken should be the fair market value of the property in view of all of the purposes to which it is naturally adapted. ..."
 "In determining the market value of the property taken, you are not limited to a consideration of the use to which the owner was putting the land, but you should take into consideration all the uses to which the property was adapted and for which it was available, including the highest possible use to which it could reasonably be put. ... Only R-1 is involved here ... as a matter of law, in this case the Court instructs the jury that at all times referred to in the evidence in this case the only lawful use that could be made of this property was for single family residence."
 The following instruction, submitted by the defendant, was rejected by the court:
 "You are instructed that in determining the highest and best use of defendants' property that you are not limited by the use presently being made of the property, nor by the particular zoning presently on the property, but you should consider the uses for which the land is adapted and for which it is available and the reasonable probability that the zoning *351 will be changed for the use to which said land is adapted and available."
 Following entry of judgment defendant moved for a new trial and filed affidavits from some of the jurors to the effect that had they not been led to believe from the instructions given that they could consider only uses to which the property might have been devoted under R-1 zoning, the verdict would have been in a larger amount. Defendant's counsel also submitted an affidavit to the effect that he had believed that plaintiff's witness would place a value of $15,000 on the property, instead of $8,500, thus constituting surprise to defendant. The affidavits were ordered stricken from the record, and the motion for a new trial denied.
 [1] The orders striking the affidavits and denying the motion for a new trial are not, as such, appealable orders (City of Los Angeles v. Glassell, 203 Cal. 44 [262 P. 1084]; Code Civ. Proc., 963), and the appeals therefrom should be dismissed since the propriety of such orders is reviewable on an appeal from the judgment. (Davenport v. Waite, 175 Cal.App.2d 623 [346 P.2d 501]; Hamasaki v. Flotho, 39 Cal.2d 602 [248 P.2d 910].) [2] It is firmly established in our law that affidavits of jurors may not be used to impeach their verdict (Kollert v. Cundiff, 50 Cal.2d 768, 772-773 [329 P.2d 897]), except when the same is allegedly arrived at by lot (Code Civ. Proc., 657, subd. 2), or where the bias or disqualification of a juror was concealed by false answers on voir dire (Williams v. Bridges, 140 Cal.App. 537 [35 P.2d 407]). Although it is urged that the affidavits should have been considered at least for the limited purpose of ruling on the motion for a new trial, no authority or reason is advanced why the general rule is not here applicable. [3] The affidavit of defendant's counsel alleging surprise as to the testimony of plaintiff's expert witness was also properly stricken because of defendant's failure to assert such surprise at the earliest possible moment, rather than remain silent at the time the testimony was offered and claim surprise only after the verdict was rendered. (Kauffman v. De Mutiis, 31 Cal.2d 429, 432 [189 P.2d 271].)
 [4] Defendant complains that plaintiff's expert on valuation gave a definition of fair market value which he utilized in formulating his opinion as to the value of defendant's property, and which definition, defendant complains, is not *352 legally correct. Defendant's objection also goes to the point that the expert was not qualified to define fair market value for the jury, as that is "a legal matter and it is for the court to decide the law in this case. ..." But the witness' testimony was not offered for the truth of his assertion of what constituted the meaning of fair market value, and it is proper for a jury to have before it the standard utilized by an expert witness in formulating his opinion as to valuations. (In re Jack, 115 Cal. 203 [46 P. 1057].) [5] An expert may detail the facts upon which his conclusions or opinions are based, even though his knowledge is gained from inadmissible or inaccurate sources. (Betts v. Southern Calif. etc. Exchange, 144 Cal. 402 [77 P. 993]; McElligott v. Freeland, 139 Cal.App. 143 [33 P.2d 430].)
 Defendant next contends that the jury was entitled to consider the possibility or probability of prospective zoning changes which might permit use of her lot for other than single family residential purposes. [6] Where there is a reasonable probability that zoning restrictions will be altered in the near future, the jury should consider not only those uses currently permitted, but also other uses to which the property could be devoted in the event of such a change. (Long Beach City H. S. Dist. v. Stewart, 30 Cal.2d 763, 768-769 [185 P.2d 585, 173 A.L.R. 249].) [7] The jury is entitled to and should consider those factors which a buyer would take into consideration in arriving at a fair market value, were he contemplating a purchase of the property (Spring Valley Water Works v. Drinkhouse, 92 Cal. 528, 533 [28 P. 681]; Joint Highway Dist. No. 9 v. Ocean Shore Railroad Co., 128 Cal.App. 743 [18 P.2d 413]; City of Stockton v. Vote, 76 Cal.App. 369 [244 P. 609]), and it is manifest that plausible and probable changes in the character of the neighborhood and in zoning restrictions in an area constitute such factors.
 In the case now engaging our attention the property was adjacent to a rapidly expanding county and city government center. A number of properties, testified to by defendant's expert witness, situated similarly to defendant's property with respect to the government center and zoned R-1, had sold recently for inflated prices for uses other than residential. The state's own expert testified that property lying between defendant's property and the government center "could substantially have a reasonable prospect of going into a better zoning ...," although he felt that defendant's property did *353 not have as good a prospect. The state appraiser called as a witness by the defendant testified that the government center development had caused property values to increase generally in the area. [8] There was evidence that the city authorities had considered rezoning the area in which defendant's lot was located, but had rejected any changes, at least temporarily. However, the defendant is not required to show that the zoning authorities were contemplating changes in zoning restrictions. The reasonable probability of a zoning change may be shown by a variety of factors, including neighborhood changes and general changes in land use. The evidence of such changes was present in the instant case.
 [9a] It is manifest that the defendant's theory of the case was that because of the changes in character which the neighborhood had undergone she could reasonably expect that her property would be upgraded in zoning and use. There was sufficient evidence to support her theory, and she was entitled to an instruction which would have permitted the jury to consider that theory. (Sills v. Los Angeles Transit Lines, 40 Cal.2d 630, 633 [255 P.2d 795]; Daniels v. City & County of San Francisco, 40 Cal.2d 614, 623 [255 P.2d 785]; San Diego Land Co. v. Neale, 78 Cal. 63 [20 P. 372, 3 L.R.A. 83]; City of Menlo Park v. Artino, 151 Cal.App.2d 261 [311 P.2d 135]; Redwood City Elementary School Dist. v. Gregoire, 128 Cal.App.2d 766 [276 P.2d 78].) [10] There is a substantial and reasonable probability that the instruction given, although open to other interpretations, could be construed by the jury as barring considerations of increased values based on prospective changes in uses to which the land may be devoted. The jury might well have concluded from the instruction given that the only use which could be considered in evaluating defendant's property was a present lawful use, and that the only present lawful use was for single family residences. This is not consistent with the rule adopted in Long Beach City H. S. Dist. v. Stewart, supra, 30 Cal.2d 763, where the court stated at page 768, quoting from Nichols on Eminent Domain: " 'When however a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration.' " This rule permits a jury to consider *354 expectations, and such expectations need not be confined to those based solely on actions taken or contemplated by zoning authorities, but also on considerations of all the pertinent circumstances, including the location and surroundings of the property.
 [11] The defendant's proffered instruction, while not setting an express time limit on the probability of a zoning change, as suggested in the Stewart case, nevertheless advised the jury to consider the "reasonable probability" of such a change. We are not persuaded, as urged by defendant, that this required the jury to consider only those changes which might occur in the near future. Furthermore, the defendant's offered instructions in this regard might have been more appropriately worded so as to avoid the possible implication that the court had concluded as a matter of law that there was a reasonable probability of a zoning change. In any event, there was no justification for an instruction which, upon a reasonable construction thereof, prevented the jury from considering defendant's theory, and the prejudice resulting to defendant as the result of the erroneous instruction is manifest. Upon a retrial of the cause it may be assumed that an instruction conforming to the statement in the Stewart case will be submitted.
 There is yet another error which requires comment. The plaintiff's objection, sustained by the trial court, that the attorney-client privilege (Code Civ. Proc., 1881, subd. 2) protected the disclosure of the appraiser's opinion employed by the state but called as a witness only by the defendant, appears not to have been well founded.
 [12, 13] The purpose of the privilege is to encourage a client to make a full disclosure to his attorney without fear that others may be informed (Greyhound Corp. v. Superior Court, 56 Cal.2d 355, 396 [15 Cal.Rptr. 90, 364 P.2d 266]; Holm v. Superior Court, 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722]; City & County of San Francisco v. Superior Court, 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418]), and the communication is nevertheless privileged although given by an agent of the client for transmission to the attorney (San Francisco Unified Sch. Dist. v. Superior Court, 55 Cal.2d 451 [11 Cal.Rptr. 373, 359 P.2d 925]). [14] But the privilege is to be strictly construed in the interest of bringing to light relevant facts. (Greyhound Corp. v. Superior Court, supra, 56 Cal.2d 355, 396.) [15] If it be conceded that the *355 appraiser was an agent of the state, and that his communications to the state's attorney were thus privileged, nevertheless defendant did not seek a disclosure of that communication. She sought only the opinion of the expert as to the fair market value of property he had appraised. The inquiry goes only to matters of the appraiser's subjective knowledge, as distinguished from his disclosures to plaintiff's counsel. This knowledge, in and of itself, is not privileged, nor does it acquire a privileged status merely because it may have been communicated to the attorney. [16] " 'Obviously, a client may be examined on deposition or at trial as to facts of the case, whether or not he has communicated them to his attorney. [Citation.] [17] While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney.' " (Greyhound Corp. v. Superior Court, supra, 56 Cal.2d 355, 397, quoting from Grand Lake Drive In v. Superior Court, 179 Cal.App.2d 122, 127 [3 Cal.Rptr. 621].) In the Grand Lake case defendant's attorney engaged an engineer to make certain tests of defendant's sidewalk on which plaintiff had slipped and injured herself. The court held that defendant's expert could be required to reveal on deposition his observations and tests of the sidewalk, and also " '... his conclusions from the making of ... [such] tests.' "
 It is manifest that the appraiser's conclusions as to the fair market value of defendant's property in the instant case occupy no different status than the engineer's conclusions in the Grand Lake case. We are referred by plaintiff, however, to Rust v. Roberts, 171 Cal.App.2d 772 [341 P.2d 46], wherein the court held the attorney-client privilege to be applicable in a situation where real property appraisers for the state were sought to be interrogated by the adverse party. But it was there sought, among other things, to compel disclosure of "the contents of the appraisers' reports" delivered to the state's attorneys in confidence. In the instant case there is no attempt to require a disclosure of the witness' communications to the plaintiff's attorney. Defendant sought only to examine the witness as to his subjective knowledge and opinions.
 We are referred also to City & County of San Francisco v. Superior Court, supra, 37 Cal.2d 227, where it was sought to question a physician as to the condition of a plaintiff whom *356 he had examined at the request of the plaintiff's attorney. The attorney-client privilege was held in that case to preclude such questioning, and it is urged here that the case is controlling. The same contention was made in Grand Lake Drive In v. Superior Court, supra, 179 Cal.App.2d 122. The court there distinguished the City & County of San Francisco case on the ground that the element of confidentiality, necessary in addition to the element of a communication in order to give rise to the privilege, was lacking. In the Grand Lake case, as in the present case, the items made the subject of the experts' examination were open premises, readily visible to anyone. In such circumstances the matters disclosed between attorney and expert were held not to be confidential in nature. On the other hand in the City & County of San Francisco case the injured plaintiff was required to submit his person to neurological and psychiatric examinations, and to reveal to the physician "characteristics of both his mind and his body which normally would be concealed and which, without his revelatory acts, and cooperation at his attorney's request, would not have been known." (Grand Lake Drive In v. Superior Court, supra, 179 Cal.App.2d 122, 126.)
 [18] Plaintiff further contends that in the instant case there were privileged communications, attorney to expert and expert to attorney, which with other material formed the basis upon which the expert's opinions were based. Therefore, it is argued, if the expert is now required to reveal these opinions he necessarily would also reveal at the same time the privileged communications. But the attorney-client privilege is not intended to encompass matters so remote and far removed from the actual communication entitled to protection. Similar arguments could be made in almost any situation where a party employs an expert to investigate and express an opinion on matters specified by the attorney. To thus expand the area of protected material would be directly contrary to the well established policy in favor of strict construction of the privilege in the interest of bringing to light relevant facts. (See Greyhound Corp. v. Superior Court, supra, 56 Cal.2d 355, 397.)
 Plaintiff also argues that in order to compel disclosure there must be "good cause" therefor, and in support thereof cites Grand Lake Drive In v. Superior Court, supra, 179 Cal.App.2d 122. The Grand Lake case involved discovery procedures and the court, in accordance with the law applicable *357 in that situation (see Code Civ. Proc., 2031), held that where properly raised good cause is a condition to the compelling of discovery. In the instant action the matter arose on an assertion of the attorney-client privilege at the trial itself, after plaintiff had commenced the action and put in issue the very matters sought to be disclosed. The questions proposed to be asked of the witness clearly were relevant, material and competent. This is all the "good cause" necessary in the lack of statutory requirements otherwise. [19] The burden of establishing the privilege and the inadmissibility of the evidence is that of the party asserting the privilege and where the privilege is not applicable there is no further showing required of the adverse party, other than compliance with the rules generally relating to evidence. Although plaintiff refers to many cases in other jurisdictions wherein, on grounds of fairness and justice, parties were not allowed to call as witnesses experts employed by the adverse party, it has not been demonstrated in this case that the ends of justice and fairness would be frustrated by the disclosure sought.
 For the foregoing reasons we are persuaded that the trial court erred in ruling that the attorney-client privilege protected the disclosure here sought. [20] But the plaintiff's objection to the offer was nevertheless properly sustained on the ground that the evidence was not admissible as rebuttal testimony insofar as appears. The offer of additional opinion evidence was merely cumulative of the defendant's case in chief. In such circumstances there is no abuse of discretion in disallowing it. (Pauly v. King, 44 Cal.2d 649 [284 P.2d 487]; California Wine Assn. v. Commercial etc. Co., 159 Cal. 49, 56 [112 P. 858].) Defendant made no attempt to justify the offer as rebuttal evidence going to new matters presented by plaintiff. (See Baillargeon v. Myers, 180 Cal. 504, 518 [182 P. 37].) Nor was the offer made in conjunction with a motion to reopen defendant's case in chief. (See Young v. Brady, 94 Cal. 128 [29 P. 489]; Reilley v. McIntire, 29 Cal.App.2d 559 [85 P.2d 169].)
 [9b] However, the trial court erred in its instructions to the jury relating to the uses for which the premises in question may be utilized in determining the value thereof, and such error being prejudicial to defendant, the verdict rendered must be set aside. *358
 The judgment is reversed and the cause remanded for a new trial.
 Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.