[Civ. No. 10337. Third Dist. Apr. 6, 1962.]

BETHEL BACCHI MOWRY et al., Petitioners, v. THE SUPERIOR COURT OF EL DORADO COUNTY et al., Respondents; GEORGETOWN DIVIDE PUBLIC UTILITY DISTRICT, Real Party in Interest.

232

Chamberlain & Chamberlain and Stanley M. Arnst for Petitioners.

No appearance for Respondents.

John R. Couzens, Orrick, Dahlquist, Herrington & Sutcliffe, Christopher M. Jenks and Richard C. Salladin for Real Party in Interest.

PIERCE, J.—In this proceeding an alternative writ of mandate was issued to review an order made by respondent court in a pending proceeding to condemn lands for a dam site in which petitioners are certain of the defendant-condemnees and Georgetown Divide Public Utility District (hereinafter called "district") is plaintiff-condemnor. The order of respondent court sustains objections to, and grants a motion to strike, all interrogatories which previously had been served and filed by petitioners, purportedly under the provisions of Code of Civil Procedure section 2030.

The interrogatories are not addressed to the plaintiff district, the adverse party. They are addressed to one V. C. Dickinson "to be answered under oath by and on behalf of

plaintiff.'' The district is the real party in interest. The district obtained immediate possession of the lands and interests condemned after an ex parte showing based upon an affidavit of said V. C. Dickinson, one of its appraisers. The court fixed security in the amounts set forth in the affidavit, of which amounts for petitioners totaled only $8.56. The complaint does not purport to condemn lands alleged to belong to petitioners, but only a flowage right over those lands, making them subservient to the overflow of a creek. The answer of petitioners, however, pleads an interest belonging to them in other lands which *are* condemned. Certain defendants, other than petitioners, moved for and obtained an increase in the security deposits. Petitioners have alleged that their discovery proceedings are preliminary to a motion for a deposit increase covering their condemned interests.

A principal objection made by the district to the interrogatories is that, as appears from the petition itself, said V. C. Dickinson is not an officer, or even an employee, of plaintiff district, and is not its agent, excepting in the sense that he was hired by it as an expert to appraise the lands and rights condemned, and was the district's witness by affidavit as aforesaid.

According to evidence referred to in the petition (depositions of the district's officers), Mr. Dickinson's services have been terminated—although he may be called as a witness at the trial.

Other objections have been made by the district to the interrogatories which will be hereinafter considered.

 We have concluded that the first, and principal, objection is sound. The language of Code of Civil Procedure section 2030, however broadly and liberally it is to be construed in favor of the party seeking discovery and in aid of the purposes of the 1957 discovery legislation (see *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 376 [15 Cal. Rptr. 90, 364 P.2d 266]), is not intended as an additional method of cross-examining, or eliciting information from, witnesses, previously or hereafter to be called by an adverse party. It *is* intended as a method of obtaining information, within the proper scope of the section, from the adverse party himself. And where that adverse party is a private or public corporation, such information must be through an officer or agent. The section reads in part:

''(a) Any party may file and serve upon any adverse party written interrogatories to be answered by the party served or,

if the party served is a public or private corporation or a partnership or association, or body politic, by any officer or agent, who shall furnish such information *as is available to the party.*" (Emphasis ours.)

Does this language mean that the party seeking discovery may select the officer or agent of the adverse party who shall furnish the information? Or does it mean that the latter may cause the answers to be given by *any* qualified officer or agent *it* selects? No California case construes its meaning.

In the recent case of *Holland* v. *Minneapolis-Honeywell Regulator Co.* (D.D.C. 1961) 28 F.R.D. 595, where interrogatories were directed to the president of the corporation, the court said, with reference to rule 33 of Federal Rules of Civil Procedure:

". . . It is the view of this court that this provision does not mean that the party serving the interrogatories may select the particular officer or agent of the adverse party and direct the interrogatories by name to such officer or agent. Interrogatories may be directed only to the adverse party, and if the adverse party is not an individual, then the party selects some officer or agent to respond to the interrogatories and to swear to the answers."

█ The language of this portion of Code of Civil Procedure section 2030 is identical with Federal Rules of Civil Procedure, rule 33 (with the immaterial exception that the latter does not specifically mention a "body politic"), and the interpretation of the *Holland* case seems consonant with the purposes of the section.

As the court in *Holler* v. *General Motors Corp.* (E.D. Mo. 1944) 3 F.R.D. 296, 298 noted: "After all, the responsibility for answering the interrogatories is upon the person or the corporation to which they are directed, and why, in the case of a corporation, should it, in its corporate capacity, not be the best judge as to the identity of the person to make answers for it? After all, it is the only one to be bound by the answers, and the only one to meet the responsibility arising from such answers."

In *Hickman* v. *Taylor*, 329 U.S. 495, 504 [67 S.Ct. 385, 91 L.Ed. 451, 459], it is said: "Rule 34, *like Rule 33*, is limited to parties to the proceeding, thereby excluding their counsel or agents."

█ Petitioner quotes both from 2 De Meo, California Deposition and Discovery Practice, page 16, section 9.08, and 4 Moore's Federal Practice, 2d ed., pp. 2278-2279, section

33.07, where both authors (using exactly the same language) state: "The party serving the interrogatories may designate therein a particular officer whom he desires to answer the interrogatories. . . ."

No authority cited supports the statement that the party interrogated must bow to the wishes of the party seeking discovery in this regard. The language of the section does not demand such an interpretation, and we perceive no reason why the construction should be inferred. ▉ Interrogatories, like requests for admissions, are addressed to the adverse party, not his witnesses. ▉ Their proper use is not in substitution of the right to obtain information by deposition. It shocks one's sense of fairness to affirm a proposition that an opponent should have the right to select the representative of a corporate, partnership, or association adversary to give answers which will not only bind such adversary but, also, under some circumstances, subject it to serious sanctions. And it is to accuse the legislature of rank discrimination to contend that it intended so to penalize partnerships, associations and corporations, including public entities, in favor of individual parties.

▉ But despite that, the word "agent," although sometimes broadly defined, cannot, as used here, be deemed to include a person whose only relationship with the entity sued, was, or is, as an expert witness hired for a particular purpose, and whose employment has terminated.

▉ Petitioners argue that, even conceding they do not have the right to designate Dickinson as the person to answer their interrogatories, the trial court should not have denied their petition, but should have required the district to select an answering agent of its own choosing.

If the interrogatories were of the kind where objective answers, regarding "facts available to the party" were sought, this argument would be sound.

The Supreme Court in *Greyhound, supra,* at pages 380-382, points out the broad powers of the trial court in making conditional orders, orders substituting another form of discovery for that sought where the latter is not the proper form—all in the interest of the expeditious use of discovery and speeding of litigation, and states that for either the trial court or an appellate court to rule narrowly in these cases is "to stultify the purposes of discovery." (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 381.) We, therefore, assume, with reluctance, the responsibility of making a

ruling here which may seem, even superficially, to frustrate full discovery.

But a study of petitioners' interrogatories shows the great bulk of them to be subjective in nature, intended as cross-examination of Mr. Dickinson, testing his credibility as an expert witness. Demonstration of this will appear even from a very brief analysis of the questions asked.

The interrogatories are seventy in number. They ask for the date Dickinson was employed, and by what means—oral or written contract; for a complete description of the property and all improvements thereon sought to be condemned. They ask for a copy of the written contract, if any, and for the date and contents of all correspondence between the district and Dickinson; for a copy of his appraisal report, if any; and of reports of other appraisers. All this information (passing for the moment the question of propriety of its discovery) is within the knowledge of the district and could be furnished under Code of Civil Procedure section 2030 by any qualified officer or agent selected by the district to answer interrogatories. But these are only a few of the matters covered by the interrogatories.

In addition thereto petitioner seeks information concerning the date Dickinson examined the property, the extent of his investigation, his opinion of the market value of the various parcels or the rights and interest condemned, the value of the part taken and the value of the remainder before and after severance considering both damage and special benefits; what he took into consideration in determining highest and best use of the property; its value as a reservoir site; and his knowledge of comparable reservoir sites; details regarding comparable sales taken into consideration. There are numerous questions testing the value of his opinion, his information concerning these, and similar, lands; the improvements thereon, timber, quarries, water rights, etc.

These questions are subjective. They cannot be answered by anyone other than Mr. Dickinson who, when he does answer them, will be answering for himself and not for the district. It would be impossible, therefore, for the district to answer them. Nor do the petitioners apparently really seek the information from a source other than Mr. Dickinson. In their petition and throughout their briefs what they seek is to cross-examine this witness.

Reserving for further discussion hereinafter the extent and limitation upon the questions which may be asked, the right

to cross-examine as a method of discovery is open to petitioners. They may take his deposition orally under Code of Civil Procedure section 2019 or they may take it on written interrogatories under Code of Civil Procedure section 2020 (in which event the district will have the right to interpose cross-interrogatories). ▮ Code of Civil Procedure section 2016 gives the clear right to a party to take the deposition of *any* person (either orally or on written interrogatories) both for the purpose of discovery and for use as evidence. Such depositions may be taken at *any* time (after summons has been served for twenty days) and without court order. ▮ Under this section Mr. Dickinson may be examined regarding any matter, not privileged, which is relevant to the subject matter of the condemnation action "whether it relates to the claim or defense of the examining party, or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts." The information sought, if relevant to the subject matter, need not be admissible in evidence at the trial. In taking such deposition petitioners will not make Mr. Dickinson their own witness. (Code Civ. Proc., § 2016, subd. (f).)

▮ ·Petitioners may desire to supplement the information thus received by propounding other interrogatories, objective in nature to the district itself to ascertain other facts relevant within the subject matter of the eminent domain proceedings. ▮ This they may do under Code of Civil Procedure section 2030; or they may request admission under Code of Civil Procedure section 2033. (See *Greyhound Corp. v. Superior Court, supra,* 56 Cal.2d 355, 381.)

▮ But whatever method they choose, or what combination of methods, the methods and the questions to be included in the respective categories are all matters for petitioners' determination. Certainly, we cannot command the trial court here by issuance of a writ to make this determination for them.

The Supreme Court, in *Greyhound, supra,* page 381, has charged trial judges to lend aid to counsel in the selection of the proper vehicle of discovery lest the purposes of the Discovery Act be destroyed, and we cannot, and do not, question the wisdom of the adjuration. But this court, however willing to direct the trial court to render paternalistic assistance cannot compel clairvoyance. No one but petitioners can make the

election of several alternate courses pointed out above. Unless and until they do there is no act which we can command respondent court to perform as an act "which the law specifically enjoins."

We should not, however, expect this controversy to be laid at rest at this point by a mere denial of the writ.

Borrowing the language of Mr. Justice Murphy in *Hickman* v. *Taylor, supra,* at p. 505: ". . . The fact that the petitioner may have used the wrong method does not destroy the main thrust of his attempt. Nor does it relieve us of the responsibility of dealing with the problem raised by that attempt. It would be inconsistent with the liberal atmosphere surrounding these rules to insist that petitioner now go through the empty formality of pursuing the right procedural device only to reestablish precisely the same basic problem now confronting us."

Objections have been made to the interrogatories other than upon the ground covered by the discussion above. The district also contends that the information sought is undiscoverable under the attorney-client privilege, under the works-product rule, on the grounds of unfairness, and as contravening public policy. Whatever form of discovery petitioners may hereafter select, these same objections may be raised. To the extent that they can be anticipated from the nature of the interrogatories now before the court, they should be settled here.

Some of them have already been answered by the *Greyhound* decision, *supra* (which had not been issued when the interrogatories were ruled upon in the trial court). Other questions have been settled by the very recent decision of the Supreme Court in *People* ex rel. *Dept. of Public Works* v. *Donovan,* 57 Cal.2d 346 [19 Cal.Rptr. 473, 369 P.2d 1]. These decisions had been preceded by decisions of federal courts and by other California Supreme Court and Appellate Court decisions.

Before discussing these cases it should be emphasized that the question before us is not the general right of a party to examine the expert employed by his adversary. Here Mr. Dickinson has already testified (by his affidavit) and it was that testimony which the court accepted as the basis for its order fixing the sums deposited as security—amounts which petitioners now desire to have increased. And they wish to cross-examine the district's expert as a part of this procedure.

The question of the right of a party generally to take the deposition of, or inspect or inquire into the reports prepared

by, an expert employed by the adverse party has been before the federal courts interpreting their Rules of Civil Procedure and this has been the subject of discussion in 4 Moore's Federal Practice, section 26.24, pp. 1152-1159. There, he states that most federal cases which have denied discovery have ignored the attorney-client privilege as a ground of opposition and have based decision on the ground of unfairness, e.g., in *Lewis* v. *United Air Lines Transport Corp.*, 32 F.Supp. 21, 3 F.R.Serv. 26b.411, Case 1, where it is said: "To permit a party by deposition to examine an expert of the opposite party before trial . . . would be equivalent to taking another's property without making any compensation therefor."

The cases discussed by Professor Moore holding that the attorney-client privilege is not applicable have also said: "Since the expert could be asked on cross-examination at the trial the basis for his conclusions, discovery is proper on the theory that 'discovery procedure simply advances the stage at which disclosure can be compelled from the time of trial to the period preceding it.' " (4 Moore's Federal Practice, pp. 1154-1155, quoting from *Bergstrom Paper Co.* v. *Continental Ins. Co.*, 7 F.R.D. 548, 11 F.R.Serv. 26b.411, Case 1.)

▆▆▆▆ Professor Moore criticizes this latter statement in the *Bergstrom Paper Co.* decision. But since in the instant controversy petitioners' desire to cross-examine the adverse party's expert *before trial* comes only after that expert's testimony *has already been relied upon by the district,* the facts here seem to place it beyond this criticism and make further discussion purely academic.

We turn now to a consideration of the California cases.

In *City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418], a defendant in a personal injury action sought to question the plaintiff's examining (but not treating) physician regarding the plaintiff's physical and mental condition. It was held that such questioning was within the attorney-client privilege. The court reasoned that effectually the function of the physician was to make meaningful the plaintiff-client's communications to the attorney and since the client's communications to the attorney were privileged so also were the physician's. Is there an analogous situation here? The case of *Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal.App.2d 122 [3 Cal.Rptr. 621], negates this view. There, in a sidewalk-negligence case the defendant employed a civil engineer to make slipperiness

240

tests of the sidewalk. On a test (by petition for writ) of the right of plaintiff to take the deposition of this expert, the appellate court affirmed such right, on a showing of good cause, stating that the witness could be questioned as to what he did, what he observed, what tests he made and how he made them; also as to his conclusions. The court held that not only were these matters not privileged under the attorney-client privilege; they were also not within the work-products doctrine (to be discussed hereinafter). The defendant, in *Grand Lake Drive In, supra,* had relied upon *Holm* v. *Superior Court,* 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722], holding that a report, the dominant purpose of which was for transmission to the attorney for trial preparation, was privileged. But the court, in *Grand Lake Drive In* distinguished its facts as calling only for the expert's knowledge and not for anything he had written or said to defendant's counsel.

In *Greyhound, supra,* at page 397, the Supreme Court reviews and approves *Grand Lake Drive In* and quotes from it as follows: " 'Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney. . . . While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney' "

The Supreme Court in *Greyhound,* in discussing the nature of discretion to be exercised by the trial court in deposition-discovery proceedings, criticized as too narrow the ruling in *Rust* v. *Roberts,* 171 Cal.App.2d 772 [341 P.2d 46], arising out of proceedings in eminent domain, where the writ was denied. Mr. Justice Peters observed (*Greyhound,* p. 381) that acreage of land condemned (and inferentially any similar relevant physical fact concerning such land) would be discoverable by a demand for admission under section 2033; that a condemnee is entitled to the name and addresses of the condemnor's appraisers by either deposition or interrogatories; that the condemnor's contentions as to the highest and best use of land can be ascertained by a series of questions asked on demands for admissions.

The Supreme Court in *Greyhound, supra,* did not overrule that portion of *Rust* v. *Roberts, supra,* which held the appraisers' report to be within the attorney-client privilege. Nor does the Supreme Court disapprove these rulings in the very recent case of *People* ex rel. *Dept. of Public Works* v. *Donovan, supra,* 57 Cal.2d 346. There the testimony of the

experts called by plaintiff condemnor and defendant condemnee had differed widely. On rebuttal, the condemnee called as a witness an appraiser who had examined the property for the condemnor but who had not theretofore testified for either party. It was held by the Supreme Court on appeal that refusal by the trial court to admit this witness's testimony as to market value *on rebuttal* was proper but that the court erred in ruling the testimony was within the attorney-client privilege.

There, the condemnor referred to the ruling in *Rust* v. *Roberts, supra,* that appraisers' reports and their contents are privileged against disclosure and the Supreme Court distinguished the *Rust* case, stating, at page 383: "... In the instant case there is no attempt to require a disclosure of the witness' communications to the plaintiff's attorney. Defendant sought only to examine the witness as to his subjective knowledge and opinions."

The condemnor in the Donovan case also cited as authority *City & County of San Francisco* v. *Superior Court, supra.* The opinion of Mr. Justice White, commenting on this, adopts the views of the court in *Grand Lake Drive In,* holding that these opinions of experts, reasons therefor, and facts justifying them, are not confidential in nature. The court, in *Donovan, supra,* further rejected a contention that to permit the expert to be examined on matters regarding his opinion would inevitably include revelation of communications from expert to attorney and attorney to expert. It says: "... [T]he attorney-client privilege is not intended to encompass matters so remote and far removed from the actual communication entitled to protection. ... To thus expand the area of protected material would be directly contrary to the well established policy in favor of strict construction of the privilege in the interest of bringing to light relevant facts." (*People* ex rel. *Dept of Public Works* v. *Donovan, supra,* 57 Cal.2d 346, 356.)

We hold, under these authorities, that the appraisers' reports sought here and their contents are within the attorney-client privilege but that said privilege does not extend to preclude the questioning of the expert here, Mr. Dickinson, as to his opinions and conclusions regarding the value of the lands and interest therein condemned, severance damage, special benefits and the reasons for said opinions (Code Civ. Proc., § 1872), or to test the worth of the opinions by

such inquiry on cross-examination as will be relevant to the subject matter.

Such questioning, under *Grand Lake Drive In, supra,* must be based upon a showing of good cause. In *Donovan, supra,* however, the Supreme Court, commenting on this, stated, at page 357: ". . . In the instant action the matter arose on an assertion of the attorney-client privilege at the trial itself, after plaintiff had commenced the action and put in issue the very matters sought to be disclosed. The questions proposed to be asked of the witness clearly were relevant, material and competent. This is all the 'good cause' necessary in the lack of statutory requirements otherwise."

The facts here are indistinguishable from the Donovan case. Here, Mr. Dickinson has already testified, in effect, by his affidavit used as the basis for fixing the security to be deposited. Petitioners wish to test his credibility by cross-examination. This is "good cause."

There remains to be considered, the objections of the district under the so-called "work-products" or "free-ride" or "public policy" rule. These rules, not concisely defined, are asserted by the opinion of Mr. Justice Murphy in *Hickman* v. *Taylor, supra,* at page 510, interpreting the Federal Rules of Civil Procedure as prohibiting "an attempt, without purported necessity or justification, to secure written instruments, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." As applied to the proposed cross-examination of Mr. Dickinson here, these objections may be quickly disposed of. Although not specifically discussed in the *Donovan* decision it must be assumed that these grounds of objection were in the minds of the court and deemed already disposed of by *Greyhound, supra.* This assumption will also apply to any interrogatories which may be filed to be answered by the district regarding physical data concerning lands affected by the proceedings, names and addresses of appraisers and the condemnor's contentions as to highest and best use, all of which matters were discussed in *Greyhound, supra,* page 379.

The work-product doctrine has been stated to be nonexistent in California. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 401.) As to "public policy" and the "free ride" it was there stated by the Supreme Court, at page 401: ". . . This is not to say that discovery may not be denied, in proper cases, when disclosure of the attorney's efforts, opin-

ions, conclusions or theories would be against public policy (as in the *Trade Center* situation, *supra*[1]), or would be eminently unfair or unjust, or would impose an undue burden. The California Legislature has designed safeguards for such situations. The sanctions which protect against the abuse of discovery give the trial court full discretion to limit or deny when the facts indicate that one litigant is attempting to take advantage of the other. Facts which give rise to the work product privilege in other jurisdictions may, in some circumstances, indicate an abusive attempt to 'ride free' on the opponent's industry.''

We hold that in the cross-examination of Mr. Dickinson on the taking of his deposition his opinions and the facts upon which they are based and the reasons therefor as discussed above are not objectionable within the ''work products,'' ''free ride'' or ''public policy'' rules. We also hold under the authority of *Greyhound, supra,* that acreages of land condemned, any similar physical facts relevant to the subject matter here, the names and addresses of the condemnor's appraisers and other witnesses, and the condemnor's contentions as to the highest and best use are all discoverable either by interrogatories addressed to the district or by demands for admissions. The demand for all correspondence between the district and Mr. Dickinson is too broad. Conceivably this correspondence could contain matters irrelevant to the subject matter of the condemnation proceedings, matters privileged, or matters undiscoverable for the limited public policy reasons within the rules last quoted from *Greyhound*. These are determinations the trial court must make.

A further foreseeable question under the scope of inquiry revealed by the petition is whether the ''comparable sales'' data of either party is discoverable before trial. A forceful argument can be made on the grounds of public policy against granting access by the condemnee to the condemnor's files in this regard. On the other hand, petitioners here, and the condemnee in any proceeding in eminent domain where an order for immediate possession is sought, will be able to elicit information from the expert whose opinion is relied upon to fix security regarding the ''comparable sales'' *considered*

---

[1]*Trade Center Properties, Inc.* v. *Superior Court,* 185 Cal.App.2d 409 [8 Cal.Rptr. 345] where a party sought to take the deposition of the adverse party's attorney and where it was held that a trial court should bar such a proceeding on grounds of public policy except ''upon a showing of extremely good cause.''

*by him,* by taking the expert's deposition. This would seem clearly within the scope of proper cross-examination to test credibility. The "comparable sales" used by that expert will usually be similar to, if not identical with, those used by all appraisers of the condemnor. Thus the condemnee will, in such cases, effectually have the condemnor's "comparable sales."

To obviate the injustice of discovery in this respect being a "one-way street" it seems to us proper to, and we do, rule that *an exchange* of "comparable sales" information between condemnor and condemnee is contemplated by the Discovery Act, as interpreted by the *Greyhound* decision, *supra.*

A last question is the right, under the facts of this case, of petitioners to obtain a copy of the contract of employment of this appraiser by the district. This contract, if written, or the substance of conversations, if oral, will be calculated to disclose the compensation being paid the appraiser. Such information is clearly in aid of cross-examination to test credibility. Such cross-examination is proper. (*Crutchfield* v. *Davidson Brick Co.,* 55 Cal.App.2d 34, 38 [130 P.2d 183].)

In the interest of expediting settlement of a controversy in which recourse to procedures designed to speed litigation have here boomeranged to accomplish the reverse, we have attempted to anticipate and rule on as many questions as can be foreseen. Other possible questions can better be determined by the trial court when the methods to be pursued by petitioners hereafter are learned.

The alternative writ is discharged. The peremptory writ is denied, without prejudice, however, to petitioners to institute such further proceedings under the Discovery Act as they may be advised, under the principles enunciated above.

Peek, P. J., and Schottky, J., concurred.