STATE of Missouri ex rel., STATE HIGHWAY COMMISSION of Missouri, Plaintiff-Appellant,

v.

A. E. CARLSON et al., Exceptions of John R. Frasher et al., Defendants-Respondents.

No. 25504.

Kansas City Court of Appeals, Missouri.

Dec. 7, 1970.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1971.

Robert L. Hyder, Chief Counsel, Earl H. Schrader, Jr., Asst. Counsel, Darold W. Jenkins, Asst. Counsel, Kansas City, for plaintiff-appellant.

William Collet, Kansas City, for defendants-respondents.

SHANGLER, Presiding Judge.

Appellant State Highway Commission undertook to acquire title by condemnation, and total taking, to a 2.22 acre tract in Kansas City belonging to respondents, Mr. and Mrs. John R. Frasher. The land taken has become part of I-435 itself a segment of the highway system encircling greater Kansas City. The Frasher tract, rectangular in dimension, was situated on the west side of Wornall, just south of 103rd Street with a frontage of 210 feet on Wornall and a depth of 455.5 feet. As of the date of taking, May 23, 1963, the land although unimproved was zoned R-1(a), which restricted its use to single family residences. Both parties filed exceptions to the commissioners' award of $7500 and a jury trial on the issue of damages resulted in a verdict of $18,000 in favor of the landowners. State Highway Commission appeals from the judgment entered on that verdict. Appellant's evidence tended to show that the fair market value, at taking, was from $6700 to $7250. Accordingly, we have jurisdiction.

The principal assignment of error is to the competency of the testimony of respondents' witness, Latshaw, given to prove the reasonable probability (in the reasonably near future) of the rezoning of the subject tract as a basis for its fair market value at taking. Another point, formally raised in appellant's brief but not sequent in the manner of its development in argument, seems to suggest that it is only present, available use which can form the basis for present market value of real estate and that respondents failed to make that proof. These points, ineluctably joined, are resolved by reference to the same evidence.

We also notice and deny respondents' contention that appellant did not properly preserve in its motion for new trial the point it now asserts as to the competency of respondents' evidence. An almost unbroken concatenation of objections to the trial testimony has preserved this point for our review. Civil Rules 79.01 and 79.03, V.A.M.R.

To establish the value of the tract taken, respondents presented two witnesses, Tom Hayes, Jr. and Parker H. Latshaw, both real estate appraisers. It is the evidence given by Latshaw which is impugned and made the subject of the grounds of error assigned. His qualification to express an opinion on the market value of real estate, although tested by objection in the trial court, is not an issue here. Specifically, his testimony was that the highest and best use of respondents' land was for a row of garden apartments which would require a rezoning to R-4, although on May 23, 1963, when it was taken in condemnation, its permissible use under the R-1 (a) zoning then in effect was for single family residences. He attributed a fair maket value of $20,000 to the tract upon the reasonable probability of 60% that it would be rezoned in the reasonably near future, after taking, from single family residences to garden apartment use. That is to say, had the tract actually been zoned R-4 at the date of taking, its fair market value would have been $28,000, an enhancement of 40%. The value accorded the tract took into account the requirements of the Kansas City Planning Commission as to the construction of garden apartments on land of comparable area. And, whereas a thirty-two unit garden apartment was authorized, such outlying garden apartments were usually not built in this density. As to them, more amenity was customary. Therefore, a twenty-four unit garden apartment development with pool and sixty-four parking places was envisioned by Latshaw as a practical and typical use of the property at optimum. It was upon the reasonable probability that such use would be available by rezoning reasonably soon after taking that Latshaw's attribution of value was based.

The exposition by Latshaw of the factual basis for his theory of value precipitated appellant's objections to the competency of some of that evidence. Preliminarily, his qualification as a professional consultant on zoning and the probability of rezoning as they affect the acquisition and use of land was formally established. Market factors which he considered in the determination of whether a given piece of land might be subject to reasonably probable rezoning for a given use include, among others, the expressed policies of the zoning authority, the availability of open land, the presence of compatible or incompatible developments, and the density of use—that is, whether there was a need for an additional, like, facility within the area. "But we chiefly rely on * * * what they (the zoning authorities) have done in the past on certain zoning matters." Then, apparently reading from a portion of his appraisal report, which he had personally assembled in preparation for litigation, and which included certain statistical data (some of it literally transcribed) from a report compiled by the Bureau of the Census, U. S. Department of Commerce, Latshaw undertook to testify that in Kansas City, apartments had not been developed "in any sizable quantities" until the middle of the 1950s. And, since then, "these walk-up apartments were being replaced by garden apartments, quite extensively in the metropolitan area, requiring zoning changes throughout the area," leading him to believe "we had a general policy there * * * would take care of the metropolitan area".

Appellant contends this evidence was incompetent because hearsay and that the court erred in having received it. The sequence of record objections appears to have been directed to that testimony derived from the statistical data issued by the Bureau of the Census and incorporated into the appraisal report, admittedly a source relied on by Latshaw in arriving at

his stated conclusions. In overruling these recurrent hearsay objections to this evidence, the Court observed: "I think this certainly would not be admissible for the purpose of proving the truth of the figures nor is it offered as such"; and, again: "I think it is admissible to show a course of conduct on (Latshaw's) part, to show valuations which he made based upon various factors, including certain background information which he gained". The Court ruled correctly.

Thereafter, Mr. Latshaw was asked if there were other indications that additional apartments were needed in the Kansas City area. Answering by continuing reference to his appraisal report, Latshaw testified that in about 1959 the J. C. Nichols Company received a rezoning south of the subject tract for garden apartments. Appellant objected that this evidence, also, was hearsay. The Court commented: "It is certainly not admissible to show that J. C. Nichols got particular zoning but it is admissible to show a basis for (Latshaw's) opinion." The Court ruled correctly.

In support of his opinion that, at taking there was a reasonable probability the subject tract would be rezoned for garden apartment use, Latshaw had prepared a plat of the general, surrounding area (received as defendants' Exhibit 6) which demonstrated the tract taken in relation to twelve other properties, each of which had been rezoned at some time between August 21, 1959 to June 15, 1967 for uses other than single family residences. Seven had been rezoned for garden apartments, while the others, for townhouses and other community dwelling uses. The zoning changes delineated in Exhibit 6 were verified by Latshaw from the ordinances effectuating them or from the official zoning maps, copies of which he owned. The exhibit was offered for the explicit purpose of demonstrating the factual basis for Latshaw's opinion that there was a reasonable probability of the rezoning of the subject tract on the date of its taking. Appellant's objection that it was hearsay and not the best evidence of the zoning changes because "the information portrayed by the profered exhibit is available as ordinances" was properly overruled by the Court.

Ten additional changes in zoning from R-1(a) uses within the area encompassed by Exhibit 6, but not depicted on it, were identified by Latshaw. During this testimony, Latshaw had upon his person, copies of the ordinances rendering the changes. Appellant's hearsay and best evidence objections to this testimony were overruled, and properly so.

In arriving at the fair market value of the $20,000 for the subject tract, Latshaw used the land comparison appraisal method, and in so doing, compared the subject tract with about twenty-five or thirty other tracts in the area and the prices at which they had been sold. No issue is raised here to the sufficiency of respondents' proof by this method of the market value contended for or as found by the jury.

In any judicial determination of the value of real estate taken in condemnation, considerations of the market place are brought into the court room. The question becomes: how does the market place arrive at value? The courts have come to recognize that the customary standards and trade channels used by the business community to arrive at appraisals of land value, although to a great extent based on information derived from others and therefore founded on hearsay, have been safely relied on. Wade v. Carolina Tel. & Tel. Co., 147 N.C. 219, 60 S.E. 987, 989; United States v. 25.406 Acres of Land, etc., (4th CCA) 172 F.2d 990, 993 [5, 6]. The majority of courts, including our own, have accommodated their fact finding methodology to this reality, (Annotation "Hearsay—Land Value—Other Sales", 12 A.L.R. 3rd 1065, 1066, Sec. 2[a]), shunning "(a)rtificial rules of evidence which exclude from the jury matters which men consider in their everyday affairs". State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20, 24 [1, 2]. Accordingly, *"hearsay and*

*best evidence rules (are not to be) applied to prevent an expert witness from giving the basis of his opinion" of value.* (Emphasis supplied) State ex rel. State Highway Commission v. Barron, Mo., 400 S.W. 2d 33, 38 [16]; State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R.2d 1207, 1212–1213; City and County of Honolulu v. Bishop Trust Co., 48 Haw. 444, 404 P. 2d 373, 384 [5, 6]; 5 Nichols, Eminent Domain, Sec. 18.42[1], pp. 188–193. This is because "(o)rdinarily evidence as to facts * * * given by an expert as the basis of his opinion as to value comes with a sufficient guaranty of trustworthiness to justify the relaxation of the hearsay and best evidence rules". United States v. 5139.5 Acres of Land, etc., (4th CCA) 200 F.2d 659, 662 [8]; International Paper Company v. United States, (5th CCA) 227 F.2d 201, 209 [10]. The admission of such evidence is also justified, not only by the expectation that the expert in an eminent domain case will have made careful inquiry into the facts upon which he bases his opinion (State ex rel. State Highway Commission v. Dockery, Mo., 340 S.W.2d 689, 695 [4, 5]; State ex rel. State Highway Commission v. Barron, 400 S.W.2d l.c. 37 [13]), but also that if he has not, "this will be developed on cross-examination and will weaken or destroy the value of the opinion". Stewart v. Commonwealth of Kentucky for Use and Benefit of Dept. of Highways, (Ky.) 337 S.W.2d 880 (quoting from United States v. 5139.5 Acres of Land, etc., 200 F.2d l.c. 662).

Underlying it all, it is relevancy which governs the admissibility of such evidence. And it is best, when it can be done, to put the jurors in possession of all the sources from which a value opinion is determined. So it is of importance to the jury to know how an appraisal was made and on what information it was based, particularly since the value of an appraisal depends very largely on the manner in which it was developed. Stewart v. Commonwealth, 337 S.W.2d l.c. 885 [10, 11]. To deprive a jury of this evidence is to divest it of a significant source of relevant information

on the value of the property, thereby impairing its function of evaluating the weight and credit to be given the opinion. State, By and Through Its Engineering Commission v. Peek, 1 Utah 2d 263, 271, 265 P.2d 630, 635; City and County of Honolulu v. Bishop Trust Co., 48 Haw. 444, 404 P.2d l.c. 388 [8].

We recognize that testimony given by an expert explaining the basis of his opinion of value or of those factors bearing on value, even when logically relevant, tends to suggest collateral considerations. It may be an ingenuous hope that the jury will always understand that the hearsay testified to by the expert were only matters considered by him in reaching his opinion, and not independent proof for it. Yet, any disadvantage which might result from the use of such evidence is more than compensated by the advantage of a more enlightened basis for its ultimate determination of value. So, while the tendency is to admit any evidence which sheds light on the question of value, it is left to the discretion of the trial judge "to keep it within bounds", State ex rel. State Highway Commission v. Barron, 400 S.W.2d l.c. 37 [8]; State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc., 381 S.W.2d l.c. 24 [1, 2], to exercise care that false issues are not suggested and that the jury is not otherwise misled. In re Armory Site in Kansas City, Mo., 282 S.W.2d 464, 472 [17].

For these reasons, we conclude the trial court properly admitted Latshaw's testimony given and received, not as independent, substantive proof of the contents of the Bureau of the Census Statistical report, or of specific changes in zoning, or of the substance of ordinances effectuating them, but in explanation of his opinion that when the tract was taken, there was reasonable probability of its rezoning soon thereafter to garden apartment use. Neither the hearsay nor the best evidence rule was violated thereby.

In principle, if not entirely on the facts, the arguments which appellant makes here were presented to the court in State ex rel.

State Hwy. Comm. v. Barron, 400 S.W.2d l.c. 34–36 [12]. That expert derived his opinion of the value of the land taken by the comparable sales method. In developing the basis for his opinion, he testified to certain details—but not the purchase prices —of recent sales of other, comparable properties. He had gleaned this information from public records and conversations with the persons involved. The testimony based upon the search of the records was alleged to have violated the best evidence rule, and that relating to the confirmation of purchase prices, the hearsay rule. In rejecting both contentions, (l.c.) the court stated the rule which we here follow as applicable to the market factor of reasonably probable future rezoning:

> "(T)he testimony as to other properties and other sales was not offered or admitted as independent substantive evidence of the value of the subject property, but in support of and as background for the opinion of the expert. *In such case the details of the sales upon which the expert bases his opinion are admissible as a basis for the opinion he expresses.*" (Emphasis supplied)

See, also People ex rel. Dept. of Public Works v. Donovan, 57 Cal.2d 346, 19 Cal. Rptr. 473, 369 P.2d 1, 4 [6]; United States v. Sowards, (10th CCA) 339 F.2d 401, 402 [1].

Appellant would have us limit the application of this rule to a case such as Barron, where the expert testimony of value is derived from comparable sales. Appellant argues: "There is no Missouri case that spells out the qualifications of a witness to enable him to give his opinion to a jury as to the existence and legal consequence of municipal ordinances." Latsaw's testimony of rezoning by ordinance, however, was offered and received to prove neither, but explicitly—and only—to explain his opinion of reasonably probable future rezoning as it affected the market value of the tract taken. Nor is there any justification in legal principle or logic to limit the rule of admissibility we have discussed in the man-

ner suggested. An appraiser is expected to have special knowledge, not only of market value, but of those factors which bear on market value. "One such factor is a study of the reasonable probability of a change in zoning restrictions due to trends of which he is cognizant." 4 Nichols on Eminent Domain, 1970 Supplement (p. 151) to Sec. 12.322 [2], p. 251. It follows, therefore, that he may give the detailed basis not only of his ultimate opinion of value, but also of those factors which bear upon that opinion, without violating the hearsay or best evidence rules. 0.040 Acres of Land, Etc. v. State ex rel. State Hwy. Dept. (Del.), 198 A.2d 7, 11 [3, 4].

Appellant then suggests that the holding in State ex rel. State Hwy. Comm. v. Kimmell, Mo., 435 S.W.2d 354, 356 [1], (which cites State ex rel. State Hwy. Comm. v. Barron to the effect) that the "(t)estimony of the specific prices paid in other sales is hearsay and not admissible if based on information learned from others" somehow nullifies the rule expressed in Barron which authorizes an expert to detail the basis for his opinion. But, since in Barron the expert gave no evidence of purchase price as a basis for his opinion of value and, here, the issue was not raised, we decline to decide whether the quoted text from Kimmell declares an authoritative rule of law (or if its reliance on Barron for precedent is justified).

Lastly, appellant cites State ex rel. State Hwy. Comm. v. Dockery, Mo., 300 S.W.2d 444 to support its contention that Latshaw's testimony was incompetent as hearsay and that even the factual basis of an expert's opinion must be established by "competent, independent evidence". In that case, plaintiff's expert witness on redirect examination attempted to detail the circumstances of a sale of land which defendant had contended was comparable to the land taken, but which plaintiff disputed. The court held that plaintiff's offer of proof disclosed that much of the testimony would constitute hearsay, and that while "(i)t is competent to bring out any rele-

vant facts upon which the expert witness bases his opinion", the witness could not, under guise of giving the basis for his opinion, put into evidence that which was otherwise incompetent (l. c. 452 [8]). It is not clear whether the hearsay evidence was offered as proof of facts or merely as the basis of the profered opinion. If the former, the holding in that case is irrelevant to our inquiry, and if the latter, it is superseded by State ex rel. State Hwy. Comm. v. Barron, supra, decided almost ten years later and which declares, as it seems to us, the enlightened view of the subject. In neither event is it a controlling precedent.

From the constantly shifting ground of appellant's argument, we make out this other point with some difficulty: since it is only present, available use which can form the basis of present market value of real estate, respondents were not authorized to value their land on the basis of reasonable probability of its rezoning for garden apartment use because, when taken, the land was actually zoned for single family residences. This contention, which is foreclosed by the contrary holdings in State ex rel. State Hwy. Comm. v. Williams, Mo., 289 S.W.2d 64 and Union Electric Company v. Saale, Mo., 377 S.W.2d 427, is an error to which appellant recurrently succumbs in argument.

■ In State ex rel. State Hwy. Comm. v. Williams, supra, the State Highway Commission raised this precise issue. When taken, the land condemned was zoned for one-family dwelling units only. The landowners offered evidence of value based on the adaptability of the land for commercial use as well as evidence tending to prove the reasonable probability of its rezoning for such use. In rejecting the argument urged then, and now, by the State Highway Commission that since the property was zoned for private residential use at taking its market value must be determined only on that basis, the court declared (289 S.W.2d l. c. 66–67):

"We cannot agree with the contention of plaintiff in this regard. It may be conceded that ordinarily only uses for which the land is adapted and available may be considered. However, an exception to this general rule is recognized in cases where the land is not available for a certain use because of a zoning ordinance, if the evidence indicates a reasonable probability of a change in the zoning ordinance in the reasonably near future. * * * '(I)f there is a reasonable probability that the ordinance may be changed or an exception made, the value for that purpose as affected by the existing ordinance may be considered.' "

It is only to the extent that such a probability of rezoning affects *present market value* that evidence of it may be received and considered at all. And "if there is a showing of a reasonable probability of a change (in zoning) * * * 'an important *caveat* to remember in applying the rule is that the property must not be evaluated as though the rezoning were already an accomplished fact. *It must be evaluated under the restrictions of the existing zoning* and consideration given to the impact upon market value of the likelihood of a change in zoning.' " Union Electric Company v. Saale, 377 S.W.2d l. c. 429 [6]. (Latter emphasis supplied).

■ Appellant's argument fairly raises the sufficiency of respondents' evidence on the question of the reasonable probability of rezoning as a factor bearing on market value. "Whether such probability of a change exists is a question of fact, * * * and whether there exists an exception as to some use either by the terms of the zoning ordinance or by statute is a question of law." Union Electric Company v. Saale, l. c. 429 [5]. " '(I)f it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property

for purposes not then available.'" State ex rel. State Hwy. Comm. v. Williams, 289 S.W.2d 1. c. 67. Evidence of probable change in zoning must be substantial, not speculative. Union Electric Company v. McNulty, Mo., 344 S.W.2d 37, 40 [4].

While it is not possible to formulate a precise calculus of factors which, if present, will constitute prima facie proof of reasonably probable rezoning, if the evidence establishes a likelihood of change sufficient to have "an appreciably enhancing effect upon present market value," it is sufficient. 4 Nichols on Eminent Domain, 1970 Supplement (p. 144) to Sec. 12.322 [1], p. 243. Some of the significant factors tending to establish such a likelihood are "the rezoning of nearby property, growth patterns, change of use patterns and character of neighborhood, demand within the area for certain types of land use, sales of related or similar properties at prices reflecting anticipated rezoning, physical characteristics of the subject and of nearby properties and, under proper circumstances, the age of the zoning ordinance". Lombard Park District v. Chicago Title & Trust Co., 103 Ill.App.2d 1, 242 N.E.2d 440, 444 [12]; Sayers v. Mobile, 276 Ala. 589, 165 So.2d 371, 9 A.L.R.3d 283, 288 [4]; United States v. 29.28 Acres of Land (D.C.N.J.), 162 F.Supp. 502, 507 [7]; People ex rel. Department of Public Works v. Donovan, 57 Cal.2d 346, 19 Cal. Rptr. 473, 369 P.2d l.c. 4 [6]. Other factors which have been considered, including the proclivity of the zoning authority toward change, are given and reviewed in Annotation, "Eminent Domain—Damages—Zoning", 9 A.L.R.3rd. pps. 309–323. See also, 4 Nichols on Eminent Domain, 1970 Supplement (p. 148) to Sec. 12.322 [3], p. 251.

Latshaw's testimony was substantial proof of the rezoning of nearby property, growth patterns, change of use patterns, demands within the area for certain kinds of land use, as well as proclivity, or "policy" of the zoning authorities favoring changes to community dwelling (including garden apartment) use of property in the area where landowners' tract was situated. All of which were "significant factors" in the determination by a jury of whether the market value of the respondents' tract was enhanced on the date of taking by a reasonable probablility of its rezoning to garden apartment use.

The jury could have inferred from Latshaw's testimony that from August, 1959 until June, 1967 (the span to which such evidence was limited by the trial court) the area surrounding the subject tract was in transition from open, largely undeveloped land, zoned generally for single family residences to that of community dwellings with suburban amenity (although within the limits of Kansas City) and progressively rezoned for such uses. The jury could have found particularly significant that when respondents' land was taken, the first phase of a 126 unit garden apartment complex, under appropriate rezoning, was nearing completion on a tract separated from the subject tract by a 100 foot strip. And that somewhat later, the 100 foot strip, itself, was developed, along with other land into an apartment complex so that the subject tract was then contiguous to apartment developments comprising several hundred units. By this evidence, respondents met their burden of proving, and the jury could have found, the reasonable probability of a change in the zoning of the tract taken to garden apartment use as to have resulted in the enhancement of its market value on the date of taking.

■ Latshaw's valuation of the property taken gave heed to the *caveat* that rezoning, even when probable, is not an accomplished fact. The fair market value of $20,000 was premised upon the existing residential zoning restrictions, with a 60% probability factor for its successful rezoning in the near future to garden apartment use, those impediments likely to be encountered having been taken into account. It is of no consequence that the "allowance (was) made of the value on the basis of rezoning as an accomplished fact minus

a discount factor to allow for the uncertainty" rather than by the method appellant suggests should have been employed, " * * * the allowance of value on the basis of the existing zoning plus an incremental factor by reason of the existence of the probability of rezoning". 4 Nichols on Eminent Domain, 1970 Supplement (p. 147) to Sec. 12.322 [1] (p. 245). The use of either method will do.

The judgment is affirmed.

All concur.