STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff,

v.

Charles J. PEDROLEY, et al., Exceptions of Churchill R. Carter and Vernon S. Reid as Personal Representative of The Estate of Churchill R. Carter, Defendants.

No. 63104.

Missouri Court of Appeals, Eastern District, Division Two.

April 26, 1994.

---

Philip E. Morgan, Jr., Government Counsel, Chesterfield, for plaintiff.

Caroline L. Hermeling, Husch & Eppenberger, St. Louis, for defendants.

CRANE, Presiding Judge.

■ Plaintiff, the Missouri Highway and Transportation Commission (Commission), brought this condemnation action against defendant, Vernon S. Reid as Personal Representative of the Estate of Churchill R. Carter (the Estate), to acquire 7.9401 acres of property owned by the Estate adjoining Interstate 270 for a directional interchange. On January 31, 1991 the condemnation commissioners assessed the Estate's damages at $521,604. Both the Commission and the Estate filed exceptions to the commissioner's report. A jury trial was held to determine the fair market value of the property on the date of taking. The jury assessed the Estate's damages at $226,769. The Estate filed a motion for new trial which the trial court granted on the grounds it had erred in excluding the testimony of one of the Estate's expert witnesses on the question of the reasonable probability of rezoning. The Commission appeals from this order. We affirm.

The Estate owned an irregularly shaped parcel of land totaling 54.1562 acres in the City of Bridgeton in St. Louis County. Plaintiff Commission took 7.9401 acres of this property which fronted Interstate 270 for the purpose of highway construction.

The principal disputed issues at trial were the highest and best use of the property in its before and after condition and the reasonable likelihood of rezoning from residential to light industrial. At the time of the taking, the property was zoned R–1 and R–2 residential and was covered by the City of Bridgeton's 1978 comprehensive land use plan. The Estate contended the highest and best use of the property was light industrial and that there was a reasonable likelihood of rezoning to that use. The Commission contended that the highest and best use was of a non-residential use permitted under R–1 and R–2 zoning and that there was no reasonable likelihood of rezoning.

At trial, the Estate called three witnesses: John R. Baggs, a professional land planner, Richard Shearer, a professional land planner, and Ernest Demba, a professional engineer and real estate appraiser. Through these witnesses, the Estate elicited evidence that a parcel of adjoining property had recently been annexed by the City of Hazelwood and zoned M–1 light industrial. The adjoining property is immediately south of Brown Campus commercial/industrial park on the northern side of Interstate 270. The Estate property also borders property owned by St. Louis International Airport which, in accordance with FAA guidelines, has been proceeding with a noise abatement program and making residential buy-outs in the area. The Estate property holds a 75LDN decibel level which, according to a Peat Marwick study, is incompatible for residential uses.

Baggs and Shearer each testified to their belief that the highest and best use of the subject property was light industrial. They further testified to their belief that a reasonable probability existed for a rezoning of the property from its R–1 and R–2 classification to some type of industrial zoning. They had testified that the airport buy-out of residential land in the area had changed the character of residential property in Bridgeton. They also had testified that the increased airport noise level made residential development no longer appropriate, that industrial development adjacent to the property affected a change in its character, and that traffic along Interstate 270 had substantially increased since 1978.

On cross-examination both acknowledged the subject property was covered by a comprehensive land use plan of the City of Bridgeton which had been adopted in 1978. They testified that under that plan the property was shown to be within an area reserved for residential use and acknowledged that the elected officials of the City of Bridgeton controlled whether the property in question would be or could be rezoned. Neither of them had spoken with the elected officials of the City of Bridgeton with regard to the probability of rezoning the Estate property. Both also admitted they were aware that two recent applications for rezoning of residen-

tially zoned properties to a commercial use had been denied.

Demba, who was a real estate appraiser, testified to his opinion that the highest and best use of the Estate property was industrial. Demba also testified to the conditions that would warrant a change in zoning. The trial court sustained the Commission's objections to allowing Demba to testify to his independent opinion on the reasonable probability of rezoning. The court ruled that, as an appraiser, Demba was not qualified to give an opinion on that subject. As a result, Demba was asked to testify to the Estate property's value before and after the taking, assuming as true the other experts' opinion that rezoning to light industrial was reasonably probable.

Using a sales comparison approach, Demba concluded that the value of the 54.1562 acres was $1,305,414 before the taking and the value of the remainder of the property after the taking was $763,771, resulting in damages of $541,643. He used four parcels of property as comparables, three of which were zoned industrial and one of which was zoned residential at the time of sale and subsequently rezoned industrial. These properties sold from $45,000 to $62,000 per acre.

In response to the trial court's ruling that Demba's independent opinion on the reasonable probability of rezoning was inadmissible, the Estate made an offer of proof that, as an appraiser, Demba considers the reasonable probability of rezoning to the highest and best use in determining the fair market value of the property. If called, Demba would testify that, on the basis of his investigation and review of various relevant factors set out in the offer of proof, it was reasonably probable the property would be rezoned.

The Commission called three witnesses who testified on matters relating to the highest and best use of the property, the reasonable probability of rezoning, and market value. These witnesses were Jerry Kaster, planning and zoning officer for the City of Bridgeton, Richard Shepard, a real estate developer and consultant, and Murray Kniffen, a real estate appraiser.

Jerry Kaster identified the 1978 comprehensive land use plan of the City of Bridgeton and testified it was still in force and effect. He acknowledged that Bridgeton had engaged a consultant to review its plan, but testified the City had not determined to change the zoning of any particular property under any contemplated plan.

Richard Shepard provided expert testimony for the Commission. As Chief Executive Officer of Linclay Corporation, he had been directly involved in the construction and development of Earth City, Brown Campus, and similar industrial developments in the northwest county area. He testified the Estate property was unsuitable for development for more intensive use because of its lack of vehicle access and restrictions on truck traffic. Shepard found the topography, access, and extent of development of the Estate property to be greatly inferior to the properties Demba had used as comparable sales. Shepard testified that rail access was feasible, but not practical, because it would be expensive and require substantial land. Shepard testified that there was no demand for additional industrial space within the area. He testified that there were hundreds of acres of available industrial sites in the Bridgeton and northwest county area and that it would take twenty to thirty years for those existing sites to be developed. He testified he would not recommend the Estate property to one of his clients and that he did not believe there was any demand for an industrial site at that location.

Murray Kniffen was hired by the Commission to determine the highest and best use of the Estate property and to appraise its value. He concluded that the highest and best use of the property before and after the taking was that of a use permitted by the current R–1 and R–2 zoning categories other than residential. Such uses could include museums, theaters, libraries, sewage treatment facilities and public parking areas and garages. Kniffen testified that the possibility of the Estate property being rezoned was very remote and that it would remain zoned at R–1 and R–2 in the foreseeable future.

Using a sales comparison approach, Kniffen valued the property at $595,700 before

the taking and $412,300 after the taking to arrive at damages of $183,400. His comparable sales were that of seven parcels. Six of those parcels were sold at prices ranging from $13,000 to $22,500 per acre and were later developed into residential subdivisions. The remaining parcel was sold for $12,587 an acre and remained undeveloped.

■ The Commission first asserts that the trial court erred in granting the new trial because the trial court properly excluded Demba's opinion as to the reasonable probability of rezoning. The trial court excluded Demba's opinion on the ground that as an appraiser he was not qualified to give an opinion on the reasonable likelihood of rezoning. The qualification of a witness as an expert is largely a matter within the trial court's discretion. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 208 (Mo. banc 1991). On a motion for new trial, a trial court may reconsider its rulings on discretionary matters and may order a new trial if it believes its discretion was not wisely exercised and that the losing party was thereby prejudiced. *McDowell v. Kawasaki Motors Corp. USA,* 799 S.W.2d 854, 862 (Mo.App. 1990). Our review of such an action is limited to determining whether the trial court abused its discretion in finding prejudice. *Id.; Oventrop v. Bi–State Dev. Agency,* 521 S.W.2d 488, 492 (Mo.App.1975).

■ Because discretionary rulings are presumed correct, the appellant bears the burden of showing abuse of discretion. *Anglim v. Missouri Pacific R. Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.; State ex rel. Mo. Highway and Transportation Com'n v. Kersey,* 663 S.W.2d 364, 368 (Mo.App. 1983). A reviewing court is more liberal in upholding the action of the trial court which has sustained a motion for new trial than

when the trial court has denied such relief. *Oventrop,* 521 S.W.2d at 492.

During trial, the trial court sustained the Commission's objections to Demba's opinion on the reasonable probability of rezoning because Demba was an appraiser, not a land planner. The trial court stated that "he is not the appropriate expert to give expert testimony on that one issue." This ruling was erroneous, which the trial court recognized in granting the motion for new trial.

■ It is well-established that an appraiser is expected to have special knowledge of market value and of those factors which bear on market value, including the reasonable probability of rezoning due to trends of which he is cognizant. *State ex rel. State Highway Com'n v. Carlson,* 463 S.W.2d 74, 79 (Mo.App.1970). An appraiser may give the detailed basis of his ultimate opinion of value and of those factors bearing upon that opinion, without violating the hearsay or best evidence rules. *Id.* It is important for the jury to know how an appraisal was made and on what information it was based, particularly since the value of an appraisal depends very largely on the manner it was developed. *Id.* at 78. "To deprive a jury of this evidence is to divest it of a significant source of relevant information on the value of the property, thereby impairing its function of evaluating the weight and credit to be given the opinion." *Id.*

The Commission concedes in its brief that Demba, as an appraiser, could be competent to testify to the reasonable probability of rezoning. However, the Commission asserts the trial court properly excluded the testimony because there was no foundation for establishing that Demba had special knowledge of the reasonable probability of rezoning and his opinion was mere speculation. The Commission argues that Demba did not testify to the factors discussed in *Carlson,* 463 S.W.2d at 81. *Carlson* held:

Some of the significant factors tending to establish such a likelihood are "the rezoning of nearby property, growth patterns, change of use patterns and character of neighborhood, demand within the area for certain types of land use, sales of related or similar properties at prices reflecting

anticipated rezoning, physical characteristics of the subject and of nearby properties and, under proper circumstances, the age of the zoning ordinance."

*Id.* (citations omitted).

In the Estate's offer of proof, counsel for the Estate stated that Demba would testify that he has physically inspected the property, reviewed the municipal zoning ordinance, reviewed the municipality master plan, talked with the city planner, talked with the engineer for the city, as well as study the trends in the municipal area with respect to surrounding land uses and changes in the character of the neighborhood, which have taken place in the recent year with respect to the airport buy-out, relating to the noise abatement program and the increase and [sic] noise generated from 270 as well as the increase of industrial property along Missouri Bottom Road, and the expansion of Brown Campus.

The offer of proof establishes that Demba's opinion would be based on the factors listed in *Carlson* and is not subject to the Commission's contention that his opinion would lack foundation on that basis.

 The Commission alternatively asserts that, even if the exclusion of Demba's testimony was error, it was not prejudicial. The Commission argues Demba was permitted to testify to his opinion of the ultimate issue, the value of the property, and because the Estate's other experts testified to the likelihood of rezoning, Demba's testimony on that subject would have been cumulative.

 The exclusion of proper evidence is ground for a new trial where the ruling is prejudicial. *Dorn v. St. Louis Public Svc. Co.,* 250 S.W.2d 859, 866 (Mo.App.1952), quoting 46 Corpus Juris, New Trial, § 75(b), page 115 (now 66 C.J.S., New Trial, § 40). The presence of other evidence of the same general character may not render the error harmless where the excluded evidence goes to the heart of the proponent's case. *Id.* "Evidence should not be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the

weight of the evidence introduced by the respective parties." *Kummer v. Cruz,* 752 S.W.2d 801, 808 (Mo.App.1988).

 The excluded testimony bore directly on the amount of damages which was the central issue of the case. The amount of damages was governed by whether there was a reasonable probability of rezoning.

In the determination of what constitutes the fair market value the jury may consider uses of the land for which it is reasonably adapted or suited and for which it is *available,* having regard to the existing business wants of the community, or such as may be reasonable expected in the future. (citation omitted) When the land is *not available* for a certain use by reason of a zoning restriction, its suitability or adaptability for such use may be shown as affecting its value as of the time of the taking if, but only if, the evidence indicates a reasonable probability of a change in the zoning restriction in the reasonably near future. (emphasis in original) ... Whether such probability of a [zoning ordinance] change exists is a question of fact, (citation omitted).

*Union Electric Co. v. Saale,* 377 S.W.2d 427, 429 (Mo.1964).

The exclusion of Demba's independent opinion on the reasonable probability of rezoning could have affected the jury's evaluation of the weight and credibility to be given his opinion on damages and could have affected the jury's determination of whether there was a reasonable probability of rezoning. The trial court's grant of a new trial was not clearly against the logic of the circumstances then before the court and is not so arbitrary and unreasonable as to shock the sense of justice or to indicate a lack of careful consideration. The trial court did not abuse its discretion in granting the motion for a new trial.

The order of the trial court is affirmed.

KAROHL and CRAHAN, JJ., concur.